## 30316. PROCTOR v. THE STATE.

INGRAM, Justice.

The appellant was convicted by a jury in the Superior Court of Dougherty County of the murder of Mack Warren. He was sentenced to serve a life imprisonment term in the State Penitentiary and, after his amended motion for a new trial was overruled in the trial court, he appealed to this court.

The evidence shows that appellant shot and killed Mack Warren with a .22 calibre pistol outside the home of Lucille Martin in Albany, Georgia, on Christmas Day, 1974. At the trial appellant admitted shooting the victim but claimed that he acted in self-defense. Appellant's version of the homicide was that he was in fear for his own safety because he thought Mack Warren was about to cut him with a butcher knife which he had used to cut Lucille Martin and Christine Sibley during a series of arguments and scuffles the deceased had with them. There was evidence that the deceased was advancing on appellant with the bloody butcher knife but there was also evidence that at the time the fatal shot was fired by appellant the deceased Warren was approximately 15 feet away from appellant and the deceased was

retreating. Appellant testified that he asked the deceased, "Mack, what are you trying to do, kill the woman [with the butcher knife]", and Mack replied, "I'm going to kill all of you." However, there was also evidence that when a police officer arrived at the scene the appellant told him, "that nigger done butchered my woman and I shot him." In brief, the evidence was in conflict and the jury could well have concluded that appellant was genuinely in fear of his life and believed the deceased was advancing on him with a butcher knife with the intention of using it to wound or kill appellant. However, the evidence also authorizes the conclusion that the deceased was retreating and that appellant shot the deceased in a spirit of revenge.

Appellant's counsel argue forcefully that a new trial should be granted on the general grounds. We do not grant a new trial on the general grounds if there is any evidence to sustain the jury's verdict. Our review is limited to this inquiry as we do not have the broader discretion possessed by the trial court to grant a new trial. The verdict has the approval of the trial judge and this necessarily means that he considers the verdict was authorized by the evidence. Since a review of the transcript shows that there is competent evidence to support the jury's verdict, this court will not order a new trial on the general grounds even though it is a close case.

On appeal our review is restricted to the legal sufficiency of the evidence, not the weight of the evidence. See *Strong v. State,* 232 Ga. 294, 298 (206 SE2d 461) (1974). "It is our duty [on appeal] to determine whether the verdict as rendered can be sustained under any reasonable view taken of the proofs submitted to the jury." *Ingram v. State,* 204 Ga. 164, 184 (48 SE2d 891) (1948); *Powell v. State,* 235 Ga. 208. This standard is satisfied by the evidence in this case.

Appellant contends the trial court erred in admitting into evidence certain written statements given by Lucille Martin, Sam Sweeney and the appellant to Detective Yelverton on the day of the shooting. Appellant also enumerates as error the ruling of the trial court which allowed the written statements to go out with the jury during their deliberations. When the state tendered

these documents into evidence, defense counsel objected on the grounds that the written statements would create prejudice and bias in the minds of the jury. The trial court overruled the objection and admitted the documents for the limited purpose of impeachment.

After the court charged the jury, defense counsel objected to the documents going out with the jury on the grounds that the jury "could reach the conclusion that they were correct in preference to the sworn testimony in the case." This objection was overruled by the trial judge.

During the trial, the district attorney sought to impeach these witnesses by cross examining them as to some discrepancies between their written statements and their trial testimony. Lucille Martin testified that Mack Warren slapped Christine Sibley before Christine picked up the knife, but her written statement contained no mention of this incident. Lucille Martin also testified that she had tried to take the knife away from Mack Warren, but in her written statement she stated that she attempted to take the knife away from both Christine Sibley and Mack Warren. In addition, Lucille Martin testified that she saw Mack Warren in the bathroom trying to stab Christine Sibley but this fact was not included in her written statement.

The district attorney cross examined appellant in regard to the version of the shooting contained in his written statement that was inconsistent with his testimony at trial. The statement recited, "He then said that he was going to kill all of yaul [sic]. I ran out the side door and around to the front door and came back into the house and Mack was still trying to get to where Christine was in the bathroom. I picked up a pistol out of Lucille's purse that was hanging on the headboard of the bed and ran back out of the house between two house [sic] and he came out of the house behind me and as I was running away from him I shot once and then I ran between the house and the car and I shot again. He kept coming on me still and I was trying to get into the house but the carpet kept the door shut and I could not get into the house. As I was trying to pull the door shut he was coming and I shot one or two more times at him and then he

fell. . ." Appellant denied that he had given that version of the shooting to Detective Yelverton.

During the cross examination of Mr. Sweeney, he identified the written statement he had given to Detective Yelverton, but the district attorney did not cross examine him regarding the contents of the statement. One phrase in the written statement was underlined, however,—"hit Mack in the chest," (referring to appellant throwing a hammer). Appellant argues that the admission of these written statements into evidence had the effect of emphasizing these written statements over the other testimony adduced at the trial and thus was harmful error.

In *Shedden v. Stiles,* 121 Ga. 637 (49 SE 719) (1905), the defendant used plaintiff's answers to certain interrogatories for the purpose of impeaching plaintiff's testimony. Over the plaintiff's timely objection, the court sent the answers to the interrogatories out with the jury during their deliberations and the jury returned a verdict for the defendant. This court held that it was reversible error to allow the written answers to go to the jury. The rationale of the court's decision was that "the testimony which they contain, if read and reread by the jury, would have an unfair advantage over oral testimony of the other side, by speaking to the jury more than once." Id., p. 640. The court also stated that, "[i]f a paper calculated to influence a jury in favor of the prevailing party goes to and is considered by them while deliberating as to their verdict, it is cause for a new trial." Id., p. 640.

Based on the rationale of *Shedden v. Stiles,* supra, it has been held to be reversible error in a criminal case to allow, over timely objection, certain documents to go out with the jury during their deliberations. See *Strickland v. State,* 167 Ga. 452, 460 (6) (145 SE 879) (1928) (written dying declaration); *Royals v. State,* 208 Ga. 78 (2) (65 SE2d 158) (1951) (written statements of the defendant and his co-conspirator); *Walker v. State,* 215 Ga. 128, 129 (2) (109 SE2d 748) (1959), (confession of defendant and his co-defendant). See also *Herrmann v. State,* 235 Ga. 400 (tape recording of incriminating statement).

We believe these decisions are distinguishable from

the present case. In each of those cases the substance of the written statement was consistent with the prevailing party's version of the contested facts and with his theory of the case. In this case the substance of all three written statements was consistent with, and actually supported, appellant's self-defense theory of the homicide. In fact, the written statements of Miss Martin and Mr. Sweeney did not conflict with their testimony at trial. Miss Martin's testimony did include statements which were not present in her written statement but nevertheless her testimony at trial did not conflict with the statements she made in the earlier written document. Consequently, if the documents tended to emphasize the statements made therein by Miss Martin and Mr. Sweeney, such emphasis would have worked to the advantage of appellant and the error committed in allowing the written statements of Miss Martin and Mr. Sweeney to go out with the jury during its deliberations would be harmless.

The question involving appellant's written statement is more difficult of resolution. While the substance of this statement is also to the effect that the homicide was committed in self-defense, and to that extent was beneficial to appellant's case, nevertheless, appellant's version of the events surrounding the homicide as related in his written statement differs from the version given by appellant and Mr. Sweeney in their testimony at trial.

However, we believe that was no prejudice to appellant's case as there was no emphasis on an inculpatory version of the events, as in *Shedden v. Stiles,* supra; *Strickland v. State,* supra; *Royals v. State,* supra; and *Walker v. State,* supra. Furthermore, the emphasis, if any, on the prior inconsistent statement over appellant's testimony at trial, including his explanation of the inconsistency, does not amount to reversible error under the circumstances of this case. The self-defense version of the homicide presented in appellant's testimony at trial was substantially reflected in the written statements of Miss Martin and Mr. Sweeney, which went out with the jury, and appellant merely denied that his written statement was an accurate account of what he had told the police officer. Under

these circumstances, the error in allowing appellant's written statement to go out with the jury was also harmless and does not require a new trial.

Appellant contends that the trial court erred in allowing these three written statements to go out with the jury in the absence of limiting instructions to the jury that they should be used for impeachment purposes only. No request for such an instruction was made in the trial court and, consequently, these three enumerations of error are without merit. *Slocumb v. State,* 157 Ga. 131 (1) (121 SE 116) (1924); *Stallins v. Southern R. Co.,* 140 Ga. 55, 56 (78 SE 421) (1913); *Long v. State,* 127 Ga. 350 (4) (56 SE 444) (1907); *Bridges v. State,* 123 Ga. App. 157, 159 (179 SE2d 685) (1970).

During cross examination of a state's witness, Detective Yelverton, defense counsel attempted to question him regarding the warrant he obtained for appellant's arrest. Specifically, defense counsel asked Detective Yelverton, "[w]hat charge did you make against the defendant?" Before Detective Yelverton answered, the district attorney objected on the grounds that the offense charged in the warrant was irrelevant to the issues in the trial. The objection was sustained. Later, defense counsel asked Detective Yelverton whether he obtained a warrant for murder against appellant. The state urged the same objection it made previously and this objection also was sustained.

Appellant now contends that his right to a thorough and sifting cross examination of the witness was abridged in violation of Code Ann. § 38-1705. Appellant asserts that Detective Yelverton would have testified that he had obtained a warrant charging appellant with involuntary manslaughter. A copy of this warrant appears in the record.

Although the testimony sought to be elicited from Detective Yelverton may have been relevant to the issues in the trial, the trial court did not commit reversible error in excluding defense counsel's question. The right to a thorough and sifting cross examination is not abridged where the question propounded calls for a conclusion by the witness as to matters which can be determined only by the jury, such as, whether there was provocation or

justification of a homicide. *Rooker v. State,* 211 Ga. 361 (1) (86 SE2d 307) (1955). See also *Anderson v. State,* 233 Ga. 433 (3) (211 SE2d 728) (1975); *Patterson v. State,* 208 Ga. 689 (2a) (69 SE2d 84) (1952).

While the present case differs from the above cases in that the question here propounded calls *ostensibly* for the statement of a fact, i. e., the crime charged in the warrant, nevertheless, implicit in that response, and the only probative value of that response, is the witness' opinion at the time he obtained the warrant as to the nature of the appellant's criminal culpability. This was an ultimate issue for the jury. Defense counsel, moreover, did not seek to elicit the testimony for the purpose of impeaching the witness (see *Smith v. State,* 161 Ga. 421, 429 (131 SE 163) (1926)), and he conducted a thorough and sifting cross examination of Detective Yelverton and the other state's witnesses on the circumstances of the shooting.

The scope of cross examination rests largely within the discretion of the trial judge (see *Hunsinger v. State,* 225 Ga. 426, 428 (169 SE2d 286) (1969); *Sullivan v. State,* 222 Ga. 691 (2) (152 SE2d 382) (1966)), and the trial court did not place an unreasonable restriction on defense counsel's cross examination of Detective Yelverton by excluding this question. This enumeration of error is without merit under the rationale of *Rooker v. State,* supra, and *Patterson v. State,* supra.

The appellant also contends the trial court erred in charging the jury on the general definition of a crime as contained in Code Ann. § 26-601, because this charge confused the jury and, in effect, instructed them that they could find the defendant guilty of murder if they believed him to have been criminally negligent.

The jury charge of the trial judge must be viewed as a whole ( see *Hilton v. State,* 233 Ga. 11, 12 (209 SE2d 606) (1974)), and, when this is done, it is clear that any possibly erroneous impression that may have been created by the language of Code Ann. § 26-601 was corrected by the trial judge's succeeding charges on murder, voluntary manslaughter and self-defense. When the charge is read in its entirety, we do not believe the jury could have been confused into thinking that a

murder conviction in this case could be founded upon criminal negligence. Therefore, we conclude this enumeration of error is without merit.

The remaining enumerations of error, argued on behalf of appellant in his original brief, have been considered by this court and are found to be without merit. We find no legal cause for reversal of the trial court's judgment for any reason urged in this appeal.

*Judgment affirmed. All the Justices concur.*

ARGUED OCTOBER 6, 1975 — DECIDED NOVEMBER 24, 1975 — REHEARING DENIED DECEMBER 15, 1975.

*Burt, Burt & Rentz, William L. Swan,* for appellant.
*Peter Zack Geer, William S. Lee, Jr., District Attorney, Dan MacDougald, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.