## 32078. HUGHES v. THE STATE.

UNDERCOFLER, Presiding Justice.

The appellant, James Hughes, was indicted by a Burke County grand jury on November 8, 1976, for the offenses of armed robbery, aggravated assault and rape. In a trial by jury on November 30, 1976, and December 1, 1976, he was found guilty on all charges and sentenced to life imprisonment for armed robbery; ten years imprisonment for aggravated assault; and death for the offense of rape. The jury found as a statutory aggravating circumstance that the offense of rape was committed during the commission of another capital felony, armed robbery.

His case is before this court on appeal and for mandatory review of the death penalty imposed.

### I. Summary of the Evidence.

The state presented evidence from which the jury was entitled to find the following:

On the morning of July 15, 1976, the victim, a legal secretary, was performing her duties in a Waynesboro law office. Between 10:00 and 11:00 a.m. the appellant entered the office and asked to speak with the attorney. After being informed that the attorney was in the hospital and would not return until Monday, the appellant left the office. At approximately 1:00 p.m. a deputy sheriff who knew the appellant met him in the vicinity of the attorney's office.

The victim returned to the law office from lunch at approximately 1:30 p.m. Between 1:45 and 2:00 p.m. the appellant returned to the office and indicated that he wished to make an appointment. As the victim turned to go to her desk to enter the appointment, she was grabbed by the appellant from behind and he placed a knife to her throat. She tried to fight him and was cut on the arm by the knife, and "He told me to shut up, and he called me a name. He called me a bitch. He told me that if I didn't shut up that he would kill me, that if I screamed he would kill me." She was taken into the library and forced to lock one of the doors while the appellant locked the second library door.

With the knife at her throat, he forced the victim over by a bookcase, again threatened her and ordered her to remove her slacks. When she refused, the appellant pushed the victim to the floor, pulled down her slacks and underwear and raped the victim.

The appellant then permitted the victim to get up and pull her slacks back up. He again called her a name and told her that "if I screamed or cried again that he would kill me." He then tied the victim's hands behind her back with a roll of tape and gagged her by wrapping tape around her head and across her mouth.

Appellant then asked the victim if the pocketbook on the desk belonged to her and she nodded. He removed $102, determined that was all the money she had, and put it in his pocket. At that time there was a loud noise from the shop next door. The appellant told the victim that if she told anybody he would come back and kill her. He then ran out the door.

The victim ran to the shop next door where she was described as screaming with her hands tied and with tape bound around her head and across her face. As she was untied she continued to scream and cry that she had been raped and that he was going to kill her. She was emotionally upset. Her blouse was partly untucked, her hair was in her face, and several spots of blood were seen on her left elbow.

Medical examination of the victim disclosed abrasions, contusions and lacerations of the lower right eyelid and left forearm. There were also lacerations of the posterior of the vagina. The victim was emotionally upset and examination revealed the presence of mobile sperm.

Between 2:00 and 3:00 p.m., July 15, 1976, the appellant hired a friend to drive him to the Wrens, Georgia, bus station. Upon their arrival, when appellant determined that the bus to Fort Lauderdale, Florida, was not scheduled for several hours he paid his friend to drive him to Louisville, Georgia, where he boarded a bus.

On November 9, 1976, the appellant was transported from Miami, Florida, back to Burke County, Georgia.

The appellant testified in his own behalf that he in fact went to the attorney's office on the morning of the offense. He denied that he returned to the office in the

afternoon and attacked the victim. Instead, he testified that he visited his sister and a friend and returned downtown to a cafe where he overheard conversations regarding the incident and the fact that he had been accused. He testified that he panicked and fled the city.

## II. Enumeration of Errors.

1. In his first enumeration of error the appellant avers that the evidence of identity was insufficient to establish beyond a reasonable doubt that the accused was in fact the individual who allegedly committed the offense.

At the trial, the victim positively identified the appellant as the individual who attacked her. At a pre-trial lineup she went through the line four times. The first and third times she identified someone other than the appellant. The second and fourth times she identified the appellant. The third time she stated she had erred and marked the wrong one but the appellant was there and she desired to view them again and picked out the appellant correctly the fourth time. The appellant testified that the sheriff prompted the victim in the identification the second and fourth times.

Whether the conduct of a lineup was so unduly prejudicial as fatally to taint an in-court identification must be determined on the totality of the surrounding circumstances. Coleman v. Alabama, 399 U. S. 1, 4 (90 SC 1999) (1969). The in-court identification can not stem from an identification procedure at the lineup "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Coleman v. Alabama, supra, p. 5; Simmons v. United States, 390 U. S. 377, 384 (88 SC 967) (1968). See also Neil v. Biggers, 409 U. S. 188 (93 SC 375) (1972).

In accord with these guidelines this court has held that all relevant factors must be considered in determining whether a witness' in-court identification is tainted by the pre-trial confrontation. *Sherwin v. State,* 234 Ga. 592 (216 SE2d 810) (1975). In *Puckett v. State,* 233 Ga. 449, 451 (211 SE2d 740) (1975), we adopted the assessment of the law by the Court of Appeals in *Moye v.*

*State,* 122 Ga. App. 14, 17 (176 SE2d 180) (1970), that "[t]he test is whether the identification confrontation staged by the law enforcement authorities, judged by the 'totality of the circumstances surrounding it,' is 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to constitute a denial of due process of law."

When the facts of this case are put to this test, we believe that the victim's having seen the appellant twice on the day of the offense, one meeting the appellant admits, and the appellant being seen by the deputy sheriff near the victim's place of employment near the time of the offense, and the circumstances of her pre-trial identification of the appellant coupled with her positive identification in court, the pre-trial lineup was not "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to constitute a denial of due process of law.

The jury was instructed on both alibi and the credibility of witnesses and by their verdict found against the assertions of the appellant. *Phillips v. State,* 236 Ga. 617 (225 SE2d 12) (1976).

Enumeration 1 is without merit.

2. In Enumeration 2 the appellant alleges that the court erred as a matter of law in not declaring a mistrial on the court's own motion because a state's witness placed the appellant's character in evidence.

During his testimony as a state's witness Robert W. Douglas, also known as Huckabuck, testified that appellant asked him to drive him to Augusta and then to Wrens, Georgia. As they approached Wrens, appellant stated, "Huck, you know I just got out of the slammer, right?" The trial court stopped the testimony and heard from the district attorney outside the presence of the jury concerning this testimony. The trial court restricted further testimony by the witness along this line. At no point did the appellant object to the testimony or urge the trial judge to grant a mistrial. There was other testimony in the trial, including the appellant's testimony, that he had been going to see his lawyer and looking for the probation officer. This infers a conviction and probation while the statement to Huckabuck could well indicate

only an arrest and not a conviction. At any rate evidence of flight is admissible and relevant on the issue of guilt. Without engaging in conjecture concerning whether the appellant may have wanted the testimony in, being relevant to an issue of the case (flight) it was not inadmissible because it incidentally puts the defendant's character in issue. *Whippler v. State,* 218 Ga. 198, 201 (126 SE2d 744) (1962); *Davis v. State,* 230 Ga. 902, 905 (199 SE2d 779) (1973); *Hudson v. State,* 237 Ga. 443, 444 (228 SE2d 834) (1976).

Enumeration 2 is without merit.

3. In Enumeration 3 the appellant asserts it was error to submit aggravated assault to the jury, it being a lesser included offense of the offense of rape.

The Georgia law (Code Ann. § 26-2001) provides, "A person commits rape when he has carnal knowledge of a female, forcibly and against her will," and Code Ann. § 26-1302 provides, "A person commits aggravated assault when he assaults (a) with intent to murder, to rape, or to rob, or (b) with a deadly weapon."

The tests specified in the 1968 Georgia Criminal Code for determining when a crime is included in another were examined in detail by this court in *State v. Estevez,* 232 Ga. 316 (206 SE2d 475) (1974). Under the factual test specified in the Code, a crime is included in the other when "(a) It is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged." Code Ann. § 26-505 (a).

In the instant case, the evidence required to convict Hughes of aggravated assault was unnecessary to prove the rape. Therefore, under *Estevez,* both crimes were properly submitted to the jury.

4. In Enumeration 4, the appellant alleges it was error to send out a record of previous conviction for robbery by force in that accompanying instructions by the court were confusing and prejudicial on the issue of sentence.

Code Ann. § 27-2534.1 provides, "(b) In all cases of other offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any

mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence."

Consideration of prior noncapital felony convictions is authorized by the foregoing language. They simply cannot be used as a statutory aggravating circumstance to authorize imposition of the death penalty and the trial court twice carefully charged the jury that they could not be so used and in fact went further and limited consideration of the prior conviction to their determination of whether to impose a life sentence or a term of years.

Under these circumstances the trial court did not err and Enumeration 4 is without merit.

5. Under Coker v. Georgia, 433 U. S. — (97 SC 2861, 53 LE2d —) (1977), the sentence of death is set aside. That decision holds the crime of rape may not be punished with death "as long as the rapist does not himself take the life of his victim." The case is remanded to the trial court for sentencing after proper hearing. Code Ann. §§ 26-2001, 27-2503.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

ARGUED MARCH 15, 1977 — DECIDED JULY 5, 1977.

*Harrison, Jolles, Miller & Bush, Charles F. Miller, Jr.,* for appellant.

*Richard Allen,* District Attorney, *Arthur K. Bolton,* Attorney General, *Kirby G. Atkinson,* Assistant Attorney General, for appellee.