### 70419. VINYARD v. THE STATE.
(338 SE2d 766)

BEASLEY, Judge.

Jamey Lee Vinyard was convicted of burglary after trial to a jury and was sentenced to serve seven years and to pay $593 in restitution. He now appeals.

1. Appellant alleges as error the trial court's action permitting a letter written by his brother to go out with the jury. The brother had earlier pleaded guilty to a charge of burglary arising from the same incident for which appellant was tried and now appeals.

The state had obtained a letter written by defendant's brother to him from the prison diagnostic center, where he was already incarcerated following his plea of guilty and sentencing for the burglary.[1] The letter was postmarked August 13, 1984, after defendant had been indicted for the same offense and was awaiting trial. If defendant had participated in the burglary, his brother was the only eyewitness known to the state, so it planned on calling him to testify. Defendant's position in defense was that he was not present at the burglary, knew nothing about it, and that after the policeman saw him at the station while on his way back from going out in his girl friend's car for something to eat, he returned to her apartment, went to sleep and did not awaken until the police came to arrest him. His brother was not there when he arrived back, he said.

The witness testified that defendant did not have anything to do with the burglary, that he admitted being alone from the very beginning when he was arrested, and that he did not deviate from that position at any time. In the course of the state's case, the district attorney asked several questions about whether the witness had "talked" to his brother about what the latter was going to say in his own defense or what he should say. The witness replied that they had never "discussed" it. Then the state asked whether he had written a letter to defendant about it, and the witness replied that he had. When the letter was produced, the witness admitted having written it. He never denied it or any part of its contents. He subsequently explained that letters are not censored when they are mailed by inmates, that "Hi Bro" meant defendant, and that the signature "little bro" meant himself.

---

[1] Apparently the letter was delivered to the prosecution by appellant's ex-girl friend. The letter was sent to her address and opened by her.

The fact that the witness never denied writing the letter but only denied discussing their respective anticipated testimonies apparently escaped attention and it was perceived that the letter constituted a prior inconsistent statement, inconsistent with the testimony that the subject had not been talked about between the two or discussed. But examination of the testimony shows that it was not inconsistent.[2]

Depending on the meaning the reader attributes to the letter's contents, it was or it was not consistent with the testimony that defendant had nothing to do with the burglary. Considering that the writer had already pleaded guilty to the crime and knew that he had told the police from the outset that he was the only one involved, if that was true he would not want his brother, who was arrested afterwards, to say anything that would jeopardize his non-involvement. Of course, if the defendant was actually a cohort, and the sentenced letter-writer was motivated by a belief he could save his brother from implication, he would not want defendant to say anything that would be inconsistent. So whether the letter is read as corroborating non-involvement or as an indication of complicity to withhold the truth, depends on the circumstances and the credibility of the witnesses. And that, of course, is a jury question. Whether its contents showed an inconsistency between the witness' unwavering testimony that he was alone was up to the jury. Thus the jurors had a perfect right to see it as evidence that the witness was not telling the truth at trial concerning who committed the burglary.

It was not "written testimony" as, for example, a deposition is. The written deposition is merely prerecorded testimony and, when the questions and answers are read to the jury during the course of the trial, the answers become the testimony and there is no need to duplicate that testimony by giving it to the jury also in its written form. As a matter of fact, to do so is error because of the added emphasis and therefore unfair advantage the twice-submitted evidence is given. Interrogatories, too, are written questions asked within the context of a lawsuit, and if the witness at trial adopts the answers previously given, they constitute no more and no less than his testimony at trial. If he denies the previously given answers, they may be read as inconsistent statements given earlier to the same questions asked at trial. *Thomason v. Genuine Parts Co.*, 156 Ga. App. 599, 600 (275 SE2d 159) (1980). Likewise with an affidavit, which is a written statement. The same applies to a dying declaration, reduced to writing and signed by the deceased. *Strickland v. State*, 167 Ga. 452, 460 (6) (145 SE 879) (1928). All of these are statements, recorded with the judicial

---

[2] The brothers had, after all, little if any opportunity to talk with one another following their separate arrests.

process in mind.

In this case the issue was whether the witness had written his brother a letter from prison concerning trial testimony which, depending on how the witness might explain it and how the jury might construe it, could be circumstantial evidence of guilt or innocence of the intended recipient of the letter. The state considered it in the former light; the defendant, although objecting to it, elicited testimony showing it could be considered in the latter light.

Since the contents of the letter, and not only whether it had been sent or not, was in issue, the jury was authorized by the rules of evidence to see it. It was the best evidence of the writing which the state sought to prove and higher proof of its contents than oral evidence thereof. OCGA § 24-5-4. It was not a reduction to writing of an oral statement, which oral statement could be re-elicited as testimony in court. Nor was it a statement in lieu of testimony. Certainly when the witness wrote the letter, he had no intention or idea that what he wrote would constitute testimony. The circumstances did not give the letter's contents the nature of testimony either. The letter was not a substitute for testimony, nor could it be as it was not under oath, for one thing. It did not constitute merely a written record of a statement by the witness, which statement to the factfinder by way of testimony was, or could have been if it had been elicited, given at trial. It was instead a private written communication from the witness in prison to his brother outside. Thus it was independent and original evidence, in and of itself. Its importance was in part its relation to the circumstances out of which it sprang. Not only the words used in the letter, all of which were not in testimony, but the spelling, the style, the handwriting and so on were evidence of the character of the communication which were not and could not be communicated to the jury by live testimony. Only the document could "speak for itself." It did not depend for its value as a letter solely on the credibility of the maker. Thus it was not double evidence when admitted. It did not bear the critical criteria that would make it inadmissible, in that the fact of the letter itself, did not depend for its value on the credibility of the maker. See *Royals v. State*, 208 Ga. 78, 81 (2) (65 SE2d 158) (1951). Whether the witness admitted it or not, it still existed.

"Interrogatories and depositions, being in lieu of testimony, should not be taken into the jury room. [Cits.] The rule does not apply to documents which, being under the best-evidence rule, are introduced as documents and not orally." *Whitehead v. Seymour*, 120 Ga. App. 25, 27 (2) (169 SE2d 369) (1969); *Dunagan v. Elder*, 154 Ga. App. 728, 729 (3) (270 SE2d 18) (1980). The reason for excluding written testimony from being sent out with the jury simply did not apply to this letter. "The reason given for not allowing interrogatories to be delivered to the jury [is] that 'the testimony which [it] contains,

if read and reread by the jury, would have an unfair advantage over oral testimony of the other side, by speaking to the jury more than once.' . . . [S]uch written testimony may have an unfair advantage over oral testimony by speaking to the jury more than once." *Royals v. State*, supra at 80-81. Part of the reasoning seems to be that such written statements are made with the calculation to influence the fact finder. *Shedden v. Stiles*, 121 Ga. 637, 640 (4) (49 SE 719) (1904). The letter was not written testimony.

2. None of the remaining enumerations of error has merit.

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Carley and Sognier, JJ., concur. Birdsong, P. J., Pope and Benham, JJ., dissent.*

Pope, Judge, dissenting.

I must respectfully dissent. I cannot agree with the majority's conclusion that the letter in question was not written testimony. As noted in passing in the majority opinion, the letter was introduced by the State and admitted by the court as a prior inconsistent statement. The record does reflect confusion over whether there was any inconsistency or not. Nonetheless, the letter was used by the State as an impeachment document, not as original evidence. The State argued that it should go out with the jury as an exception to the general rule. The State concedes the general rule that "[w]ritten documents . . . that substitute for testimony may not be taken into the jury room when the jury retires. [Cits.]" *Johnson v. State*, 244 Ga. 295, 296-97 (260 SE2d 23) (1979). This court explained the rule in the case of *Thomason v. Genuine Parts Co.*, 156 Ga. App. 599, 601 (275 SE2d 159) (1980): "[W]ritten statements such as interrogatories, dying declarations, confessions of guilt, depositions, etc., should be allowed in evidence by reading same to the jury and presented in evidence in that form but not allowed to be in the possession of the jury during their deliberations. In other words, the jury heard the testimony from the witness stand but same should not be unduly emphasized by giving the jury an opportunity to read them one or more times after hearing them read in the courtroom, whereas oral testimony from the stand is heard only once. [Cit.] Where any such papers are delivered to the jury over timely objections, a new trial is in order."

However, the State contends that letters do not fall within this general rule. In support of this proposition, the State refers us to Green, Ga. Law of Evid. (2nd ed.), § 87.1: "Letters, diagrams, and written inconsistent statements introduced to impeach witnesses go out with the jury when it retires for deliberation." Green's volume on evidence is a well-respected and often-used reference work for lawyers in this state. However, lawyers should remember to use any such reference work only as a guide; the lawyer must read the cases cited by

the text to see if the proposition is indeed supported by case authority.

The quote above illustrates this point. The case of *Stallins v. Southern R. Co.*, 140 Ga. 55 (2) (78 SE 421) (1913), is cited in the Green text for the proposition that written inconsistent statements go out with the jury. A reading of the case shows that the court merely held that where counsel objected to the document going out with the jury on the ground that the document had not been admitted into evidence, "but as he was in error in that position, the overruling of the objection furnished no ground for a new trial." Id. at 59. Thus, the holding of the case is quite narrow: counsel made the wrong objection, and the statement went out with the jury. The second case cited by Green for this proposition is *Johnson v. State*, supra. In *Johnson*, appellant contended that the court erred in *not allowing* an impeaching written statement to go out with the jury. The court in *Johnson* found no error, thus holding that written inconsistent statements may not go out with the jury. Thus, Green erroneously cites this case in support of his proposition.

Green cites the case of *Rudulph v. State*, 16 Ga. App. 353 (8) (85 SE 365) (1915), for the proposition that letters go out with the jury. Headnote 8 reads in pertinent part: "There was no error in permitting the jury to take to their room certain letters . . . admitted in evidence without objection and read to the jury. . . . As to such evidence the rule is different from that applied to depositions. 2 Thomp. Trials, § 2575; *Shedden v. Stiles*, 121 Ga. 637 (4), 639 (49 SE 719) [(1905)]." *Shedden* simply stands for the general rule that depositions and interrogatories should not go out with the jury, and if they do go out, a new trial is in order. Section 2575 of Thompson on Trials, a 1912 treatise, begins with this statement: "The modern practice is believed to be to send to the jury-room all documents and papers, *other than depositions*, which have been received in evidence." The section goes on to discuss, and to criticize, the rule holding it to be error to allow documentary evidence to go out with the jury where a party has made objection to it going out with the jury. This is the rule which has always been followed in Georgia. No Georgia case, nor any case dealing with letters, is discussed or noted in the section.

It appears that reliance upon *Rudulph*, supra, for the proposition that letters go out with the jury regardless of any objection to their going out is misplaced. I can find no case in Georgia which has cited the *Rudulph* case for such a proposition. I read the holding in *Rudulph* to be that where no objection is made to the documents going out with the jury, the court will not reach the issue. The statements about the rule in regard to letters is but erroneous dicta.

It is not whether a document is a letter, or a statement, or a confession, which will determine whether it may go out with the jury, but

rather whether the document substitutes for testimony. If it does, it may not go out. If it does not, as in the case of a diagram or a photograph, it may go out with the jury. In the present case the letter is a document which does substitute for testimony. The State merely used the letter as a device to impeach an alleged inconsistent statement. The contents of the letter were read to the jury. The witness testified to it. Therefore, it was error to allow it to go out with the jury. "However, the question remains whether the trial court's error in this regard was harmful and requires a new trial. Under the standard established in *Proctor v. State*, 235 Ga. 720 (221 SE2d 556) (1975), and *Lane v. State*, 247 Ga. 19 (273 SE2d 397) (1981), it is not reversible error for a written statement to go out with the jury if that statement is consistent with the theory of the defense. If written evidence is not consistent with the theory of the defense, the trial court's error in permitting it to go out with the jury may nonetheless be harmless if it is highly probable that the error did not contribute to the judgment. *Owens v. State*, 248 Ga. 629 (284 SE2d 408) (1981)." *Heard v. State*, 169 Ga. App. 609 (314 SE2d 451) (1984).

The theory of appellant's defense was that he was unaware of and took no part in the burglary which his brother admitted committing. Thus, the statements in the letter to the effect that the two must get their stories straight are not consistent with appellant's defense. Therefore, the rule set out in *Proctor* and *Lane* would not apply. Nor can I say that it is highly probable that the error did not contribute to the judgment. The evidence against appellant was circumstantial. A police officer saw appellant crouched down next to his car in a parking lot next to the service station which was the scene of the burglary. The time was between 2:30 a.m. and 3:00 a.m. Appellant claimed he was relieving himself after having drunk much beer. The officer let him go. Later that morning the officer checked the service station and discovered the burglary. Appellant was arrested at the apartment of Gail Stephens where police found money taken in the burglary. Appellant's brother Steve, who admitted the crime and testified that he committed it alone, had also been in the apartment both before and after the burglary. In these circumstances, I cannot say with certainty that there is a high probability that the presence of the letter with the jury did not contribute to the judgment. Therefore, a new trial is in order.

I am authorized to state that Presiding Judge Birdsong and Judge Benham join in this dissent.

DECIDED DECEMBER 5, 1985.

*Hubert E. Hamilton III*, for appellant.
*David L. Lomenick, Jr., District Attorney, David L. Whitman,*

*Assistant District Attorney*, for appellee.