A91A2184. TAYLOR v. THE STATE.
(415 SE2d 483)

BEASLEY, Judge.
Following the denial of his amended motion for new trial, Taylor appeals his convictions for rape, OCGA § 16-6-1 (a), aggravated sodomy, OCGA § 16-6-2 (a), aggravated assault with a butcher knife, OCGA § 16-5-21 (a) (2), aggravated assault by beating with hands and fists, OCGA § 16-5-21 (a) (2), and possession of less than one ounce of marijuana in violation of the Georgia Controlled Substances Act, OCGA § 16-13-2 (b). He was sentenced as a habitual offender, OCGA § 17-10-7. Taylor was also indicted for one count of armed robbery, OCGA § 16-8-41 (a) but a nolle prosequi was entered following the State's motion to dismiss this charge. All charges and convictions stem from the early morning break-in and attack at a 70-year-old widow's home, over a period of at least four hours.

The sole question raised in the appeal is the existence of the factual merger aspect of double jeopardy. OCGA §§ 16-1-7 (a) (1) and 16-1-6 (1). See also Ga. Const. 1983, Art. I, Sec. I, Par. XVIII. Appellant contends that both aggravated assault charges merged as a matter of fact with the rape and aggravated sodomy, precluding additional sentences for the assaults. Alternatively, he urges that only the knife assault was separately punishable and that the fist assault was in the sex crimes. In denying a new trial, the court specifically rejected factual merger after finding that appellant "used violence above and beyond that necessary to effectuate the rape and aggravated sodomy."

The evidence construed in favor of the verdict showed the following. At approximately 1:15 a.m. on August 6, 1989, the victim was home alone watching television in her bedroom. The doors and windows of her house had been locked. The woman heard a noise over and above that made by the air conditioner and went into the front living room to investigate. She saw the appellant standing there. He had broken in through the living room window.

The woman asked appellant, whom she had never seen before, who he was and what he wanted. Appellant responded, "G_dd__n

mother f_____, get naked. I'm going to f____ you," and hit the woman on the head with his fists. He threatened to kill her, and he hit her repeatedly in the face with his fists.

The victim was dragged into the bedroom by pulling her by her arm and hair. Several clumps of hair were pulled out of her head. A gold chain was jerked off her neck. Appellant forced her to disrobe and kneel naked on the floor. He forced her to have vaginal and anal intercourse and to perform oral sex on him. She bled both orally and vaginally.

Appellant took the victim into the kitchen, where he took mayonnaise out of the refrigerator and picked up a knife. As appellant started toward the victim to cut her, she attempted to grab the knife, push appellant against the wall and/or grab him around the neck. She believed appellant was going to kill her, which he had continually threatened to do. She was unable to grab his neck because, she said, it was "so greasy and sweaty."

During the struggle, the knife lacerated the victim's hand. Appellant hit her again, pulled her by her hair, and pushed her over into a bathtub. The victim begged appellant to help her out of the bathtub. He responded that he was not going to leave and that he was going to kill her. At one point, appellant rummaged through a closet demanding to know where a gun was located, even though the victim told him she did not have a gun.

Appellant told the woman he was going to drink her blood. When the victim asked to go to the bathroom, appellant replied that there was no need for that because he was going to drink her urine. Appellant inserted the mayonnaise and some hair grease he found in a drawer into her vagina and performed oral sex on her. He bit her on the eyelids and on the breasts.

Appellant found some whisky, poured a teacup full, spit in it, and told her to drink it. When his head was turned, she poured it out but appellant refilled it. She took some in her bleeding mouth but spit it out because of the pain.

He finally allowed her to go to the bathroom. When she returned to the bedroom, appellant passed out on the bed. The victim fled naked and bleeding to a neighbor's home and the police were summoned. They found appellant still asleep on the bed. His trousers were unzipped and his genitalia exposed.

The evidence authorized the finding that there were two separate assaults, one committed with appellant's fists and one committed with a knife wielded by appellant. Both constituted gratuitous physical violence which was distinguished from the forced sex acts. See *Watson v. State*, 178 Ga. App. 778, 780 (2) (344 SE2d 667) (1986) (physical precedent); *Sylvester v. State*, 168 Ga. App. 718 (2) (310 SE2d 284) (1983); *Coaxum v. State*, 146 Ga. App. 370, 371 (3) (246

SE2d 403) (1978). As in *Hughes v. State*, 239 Ga. 393, 397 (3) (236 SE2d 829) (1977), "the evidence required to convict [Taylor] of aggravated assault was unnecessary to prove the rape." The assaults even occurred in different locations in the house and to different parts of her body, than the sex crimes. They did not have to follow the sex acts in time in order to be additionally punishable crimes.

It was not error to sentence appellant separately and additionally on the jury's findings of guilt for the aggravated assaults, as there was no factual merger of offenses as a matter of law. The evidence of the two assaults, one with fists, and one with a knife, was not necessary to prove the rape, so there was no violation of OCGA §§ 16-1-6 (1) and 16-1-7 (a) (1).

*Judgments affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED FEBRUARY 3, 1992.

*J. Robert Daniel,* for appellant.

*Willis B. Sparks III, District Attorney, Graham A. Thorpe, Thomas J. Matthews, Assistant District Attorneys,* for appellee.