A95A0656. HUGHES v. THE STATE.
(458 SE2d 911)

POPE, Presiding Judge.

Kenneth Hughes was charged with burglary, aggravated assault

---

and rape. He was convicted of aggravated assault and rape and appeals.

Viewing the evidence in the light most favorable to the verdict, the victim, Ms. Smith, and Hughes were involved in an erratic romantic relationship for about 14 years. During the course of the relationship, they lived together and had a daughter. The relationship ended around August 1993.

On October 11, 1993, Smith returned home after 6:00 p.m. She went to her bedroom to undress, heard a noise in the kitchen and went to investigate. She saw Hughes, who no longer had a key to the residence, standing in the kitchen at the back door. Smith grabbed the phone and tried to dial 911, but Hughes snatched the phone out of the wall. He pushed Smith against the sink and grabbed a knife. He held the knife over Smith and told her that he would kill her.

Hughes, while still holding the knife, then pulled Smith back to the bedroom. Once in the bedroom, Hughes told Smith to take off her clothes. She took off everything except her bra; during the time she was disrobing, Hughes again stated that he would kill her. After her clothes were off, Hughes pushed Smith down on the bed, tore off her bra and raped her. During the rape, the knife was on the side of the bed. At one point, Hughes held the knife over Smith's heart and told her he would stab her in the heart. When Hughes left, Smith, who was hysterical, called the police and several family members.

Smith received a letter, postmarked five days after the rape, from Hughes. The letter was not read to the jury, although it was admitted into evidence. In the letter, Hughes apologized for all that he had done to hurt Smith. He stated that he was in a drug rehabilitation program and that when he last saw Smith he was "high." He wrote that he had also been in pain, because he did not want to break up. He stated that he "was not saying that the drugs made him act that way," but that he had just acted stupid and crazy. Hughes then told Smith to relay his apologies to her family.

Hughes' defense was consent. He testified that he and Smith had argued over money Hughes owed her. Hughes recalled that he and Smith had also argued about his plan to move to California. Hughes explained that his letter to Smith was an apology for his general treatment of her, not an apology for a specific incident.

1. Hughes argues that the aggravated assault count merged into the rape count. He contends that the charges were not based on separate acts and that the evidence used to prove the rape was required to prove the aggravated assault.

We disagree and find that there was no merger of the offenses. The evidence authorized the finding that both an aggravated assault and a rape were committed. See generally *Sylvester v. State*, 168 Ga. App. 718 (2) (310 SE2d 284) (1983). "As in *Hughes v. State*, 239 Ga.

393, 397 (3) (236 SE2d 829) (1977), the evidence required to convict [defendant] of aggravated assault was unnecessary to prove the rape." (Punctuation omitted.) *Taylor v. State*, 202 Ga. App. 671, 673 (415 SE2d 483) (1992).

2. Hughes also argues that the court erred in allowing the letter he wrote Smith to go out with the jury during deliberations. Citing *Royals v. State*, 208 Ga. 78 (2) (65 SE2d 158) (1951), and *Davis v. State*, 178 Ga. App. 760, 763 (3) (344 SE2d 730) (1986), Hughes argues that the letter incriminates him and should not have been allowed into the jury room.

The general rule is that "[w]ritten documents . . . that substitute for testimony may not be taken into the jury room when the jury retires." (Citations omitted.) *Johnson v. State*, 244 Ga. 295, 296-297 (260 SE2d 23) (1979). This court explained this rule in *Thomason v. Genuine Parts Co.*, 156 Ga. App. 599, 601 (275 SE2d 159) (1980): "[W]ritten statements such as interrogatories, dying declarations, confessions of guilt, depositions, etc., should be allowed in evidence by reading same to the jury and presented in evidence in that form but not allowed to be in the possession of the jury during their deliberations. In other words, the jury heard the testimony from the witness stand but same should not be unduly emphasized by giving the jury an opportunity to read them one or more times after hearing them read in the courtroom, whereas oral testimony from the stand is heard only once. Where any such papers are delivered to the jury over timely objections, a new trial is in order." (Citations omitted.) Nevertheless, in certain cases, letters have been allowed to go out with the jury. *Vinyard v. State*, 177 Ga. App. 188 (338 SE2d 766) (1985); *Moore v. State*, 191 Ga. App. 911 (383 SE2d 355) (1989).

It is unnecessary to resolve whether the letter was properly allowed to go out with the jury since any error was harmless. First, we note that the letter was never read to the jury, and thus, the document was not duplicative of testimony. Moreover, "[u]nder the standard established in *Proctor v. State*, 235 Ga. 720 (221 SE2d 556) (1975), and *Lane v. State*, 247 Ga. 19 (273 SE2d 397) (1981), it is not reversible error for a written statement to go out with the jury if that statement is consistent with the theory of the defense. If written evidence is not consistent with the theory of the defense, the trial court's error in permitting it to go out with the jury may nonetheless be harmless if it is highly probable that the error did not contribute to the judgment. *Owens v. State*, 248 Ga. 629 (284 SE2d 408) (1981)." *Heard v. State*, 169 Ga. App. 609 (314 SE2d 451) (1984).

Applying the foregoing principles to the instant case, we find that the letter was consistent with Hughes' theory of defense. Hughes testified that during the relationship with Smith he had cheated on her and sometimes been difficult. He explained that the letter was an

apology for his general treatment of Smith. He explained that the drug treatment program he had enrolled in after October 11, 1993, was a "spiritual" program and that part of that program was to apologize to people you had wronged.

Hughes testified that the letter was also an apology for the argument he and Smith had on October 11. He stated that the letter's statement that "I'm not saying that the drugs made me act that way, I was just stupid and dumb and crazy," was a denial that drugs were responsible for his behavior since he was drunk on that date. Because the letter was consistent with Hughes' defense, we find no harmful error in allowing it to go out with the jury.

3. Hughes claims that the trial court erred in allowing the State to ask a witness who testified as to his good reputation if he had heard that Hughes had been arrested for other offenses. Assuming that this argument was properly preserved, it has been decided adversely to appellant. *Whatley v. State*, 131 Ga. App. 320 (2) (205 SE2d 517) (1974); *Nassar v. State*, 253 Ga. 35, 36 (4) (315 SE2d 903) (1984); *Montgomery v. State*, 173 Ga. App. 570, 572 (3) (327 SE2d 770) (1985).

4. Hughes next contends that the trial court erred in failing to excuse two prospective jurors for cause. Hughes made no motions to excuse the jurors for cause and has waived any alleged error. OCGA § 15-12-167; *Sullens v. State*, 239 Ga. 766 (1) (238 SE2d 864) (1977).

5. Finally, Hughes contends that the court erred in refusing to allow his attorney to further question a prospective juror concerning his ability to be fair. Hughes made no objection or motion with regard to the alleged error, and the issue was waived. *State v. Graham*, 246 Ga. 341 (271 SE2d 627) (1980). Moreover, the trial court did not abuse its discretion in controlling the scope of the voir dire. See generally *Curry v. State*, 255 Ga. 215 (2) (336 SE2d 762) (1985).

*Judgment affirmed. Beasley, C. J., and Ruffin, J., concur specially.*

BEASLEY, Chief Judge, concurring specially.

I concur fully in all divisions of the majority opinion except Division 2. As to it, the letter which the defendant wrote to the victim after the assault was admissible as such. It was demonstrative evidence, a written communication that was not given orally and memorialized in writing. It was not written testimony, a statement recorded for the judicial process, as are depositions, interrogatories, recorded confessions, and written dying declarations. It was not "a paper calculated to influence a jury." *Shedden v. Stiles*, 121 Ga. 637, 640 (4) (49 SE 719) (1905). "The reason given for not allowing [depositions] to be delivered to the jury is, that the testimony which they contain, if read and reread by the jury, would have an unfair advantage over oral tes-

timony of the other side, by speaking to the jury more than once." Id.

Instead, the letter constituted part of the activity between the defendant and the victim. As in *Vinyard v. State*, 177 Ga. App. 188, 190 (338 SE2d 766) (1985), "[i]t was the best evidence of the writing which the state sought to prove and higher proof of its contents [and of what the victim saw when she opened it] than oral evidence thereof. OCGA § 24-5-4." The letter constituted part of the activity between the defendant and the victim.

I am authorized to state that Judge Ruffin joins in this special concurrence.

DECIDED JULY 10, 1995.

*William M. Traylor*, for appellant.

*J. Tom Morgan, District Attorney, Desiree L. S. Peagler, Assistant District Attorney*, for appellee.