A04A0354. HAYES MICROCOMPUTER PRODUCTS, INC.
v. FRANZA et al.
(601 SE2d 824)

ANDREWS, Presiding Judge.

Hayes Microcomputer Products, Inc. (Hayes) appeals from the trial court's denial of its motion for judgment notwithstanding the verdict and motion for new trial following the entry of judgment on the jury's verdict in favor of Gary Franza and John Stuckey, former executives of Hayes, on their claims for libel, punitive damages, and attorney fees.[1]

A judgment [notwithstanding the verdict] is properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is *any evidentiary*

---

[1] These claims were counterclaims in the March 1996 suit filed by Hayes seeking declaratory judgment and damages for breach by Franza, Stuckey, and Mikhail Drabkin, another executive, of their fiduciary duties to the corporation. Only the counterclaims of Franza and Stuckey were tried. As a result of the filing of a second bankruptcy proceeding by Hayes in 1998 and its dismissal of its claims against Franza, Stuckey, and Drabkin, these three former executives and Hayes entered into the March 1, 1999 stipulation that any judgment or decree in their favor against Hayes "shall be enforceable only against any contract, agreement, or policy providing insurance or indemnification to Hayes Microcomputer Products, Inc. as to such claim, liability, or judgment. . . ." Drabkin dismissed his counterclaim on March 6, 2001.

basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion. Also, the grant or denial of a motion for new trial is a matter within the sound discretion of the trial court and will not be disturbed if there is *any evidence* to authorize it.

(Citations and punctuation omitted; emphasis supplied.) *Professional Consulting Svcs. &c. v. Ibrahim*, 206 Ga. App. 663, 665 (1) (426 SE2d 376) (1992).

Viewed in favor of the verdict for Franza and Stuckey, the evidence was that Hayes filed its original Chapter 11 bankruptcy petition in November 1994. At that time, Dennis Hayes was the company's Chairman (and only member of the Board of Directors), President, and largest stockholder. Franza was Vice President of Sales, Stuckey was Vice President of Product Management, and Drabkin was Vice President of Engineering. All were at-will employees.

It became obvious in 1995 that Hayes was a seriously troubled company and one of its major problems was that it had long since outgrown its management structure. The primary feature of this structure was that Dennis Hayes maintained a highly personalized and autocratic style of management that involved him in the day-to-day details of running the company. Regarding this problem, the attorney for the Official Committee of Unsecured Creditors in the original 1994 bankruptcy said "[t]he Committee's view was — and again, this was expressed very openly to Mr. Hayes — that Mr. Hayes had taken on too many things himself; that Hayes Microcomputer had grown to the point that one person couldn't do all of that, and that he needed a separate person to be responsible for day-to-day operations." This view was also held by Franza, Stuckey, and Drabkin, as well as other employees of Hayes, including Hank Murphy, Hayes' accountant. Numerous frustrated managers privately went to Stuckey to complain about Mr. Hayes' micro-management.

In order for Hayes to emerge from bankruptcy, it was necessary for a plan of reorganization to be approved by the bankruptcy court. Franza and Stuckey, as well as other executives, were involved in the preparation of Hayes' Plan and understood that, as part of that Plan, Mr. Hayes would be stepping back from day-to-day operations of the company, and these duties would be turned over to a new Chief Operating Officer to be hired from outside Hayes.

As Hayes' proposed Plan was being finalized in preparation for presentation to the bankruptcy court for approval, Franza and Stuckey learned that, contrary to what they had been led to believe, the proposed Plan did not address key management structure issues

regarding Mr. Hayes' role in the company. In fact, the proposed Plan was drafted so that Mr. Hayes could remain very much involved in day-to-day decision making. Franza and Stuckey, along with others, made Mr. Hayes aware that they did not agree with this part of the proposed Plan.

Franza, Stuckey, and Drabkin realized that their situation regarding the upcoming bankruptcy court hearings on Hayes' Plan placed them in a precarious position regarding their own personal interests. As key executives of Hayes, they knew they would be called to testify by Hayes and interested creditors during the hearings regarding confirmation of Hayes' proposed Plan, including specifically their views regarding management structure issues. They also were aware that, if they testified truthfully, their position would put them in direct conflict with that of Mr. Hayes.

Concerned with their duties to Hayes, the creditors, the bankruptcy court on one side and the conflicting position of Mr. Hayes on the other, Franza, Stuckey, and Drabkin retained personal counsel to advise them during the week prior to the confirmation hearing which was to begin December 18, 1995. A series of confidential meetings occurred between the three executives and their attorney and Hayes, Mr. Hayes, and their attorney regarding the proposed Plan and Mr. Hayes' intentions regarding his role. An attempt was made to persuade the three executives that it was really Mr. Hayes' intention to reduce his responsibilities and leave the day-to-day operations to a fully empowered Chief Operating Officer. Mr. Hayes, however, would not agree to modify the proposed Plan to ensure this result.

These meetings were intended to be private and confidential from other employees, including other management personnel, and were held off site for that reason. On Sunday afternoon, December 17, immediately preceding the confirmation hearing on Monday, Mr. Hayes called an "emergency meeting" of all managers except Franza, Stuckey, and Drabkin. Among those who were included in the meeting were a number of managers who reported directly to the three excluded executives. At that meeting, Mr. Hayes told the managers that "we're at war" with the three executives and his wife proceeded to personally attack these men.

Franza, Stuckey, and Drabkin felt compelled to call a meeting, open to any interested employees, on Monday afternoon, to explain their position and answer any questions arising from the Sunday meeting. Mr. Hayes was attending the confirmation hearing, but, when given a note by Andrew Dod, the company communications director, requesting that the conference center at Hayes be turned over to the three executives for a meeting, Mr. Hayes indicated consent. Dod also advised Mr. Hayes that he would attend the meeting.

When Franza, Stuckey, and Drabkin arrived for the meeting, it was apparent that there was great tension in the audience. The intent of the three executives, who were in charge of important areas of the company's management, was not to solicit support or opinion, but to make sure these employees knew what their concerns were concerning management of the company and to "try to dampen down what we felt was a very high state of anxiety on the part of the employees when we arrived." Dod described the presentation at the meeting by Stuckey, who spoke for the three, as "very methodical" and "very careful in his choice of words . . . what he viewed as the crux of the issue." Franza, Stuckey, and Drabkin believed that they were attempting in good faith to fulfill their fiduciary duties to Hayes, its employees, and its creditors, although knowing that it would adversely impact their careers.

The confirmation hearings continued over several weeks and both Franza and Stuckey were called to testify. They testified truthfully regarding their concerns about the management structure and Mr. Hayes' participation in it. Of the three competing plans for reorganization,[2] the one submitted by Hayes was confirmed by order of the bankruptcy court on March 8, 1996.

On March 18, 1996, the day on which the bankruptcy court's order became nonappealable, the jobs of Franza and Stuckey were terminated. On that day, Hayes sent an e-mail to all employees worldwide who had an e-mail address on the company's system stating that "[e]ffective immediately, Gary Franza and John Stuckey have been terminated for cause. (This is for internal information only; externally we should only say they no longer work here.)" Employees in Australia and Hong Kong, unconnected to Franza and Stuckey, received the e-mail as well as those in the United States over whom Franza and Stuckey had authority.

Although attempts were made to mediate the dispute between the three executives and Hayes, they were unsuccessful. On March 21, 1996, Hayes filed the original suit for declaratory judgment and breach of fiduciary duties against the three executives, resulting in the defamation counterclaim. In addition to filing suit, Hayes' attorney, its publicist, and Mr. Hayes called a reporter for the Atlanta Journal-Constitution and advised that the three had been fired "for cause." The reporter was also advised that Hayes contended that they had committed a "breach of fiduciary duty outside the courtroom." The newspaper ran an article reporting that the three executives had

---

[2] The Official Committee of Unsecured Creditors and U. S. Robotics Corporation, a rival of Hayes, also submitted plans.

been terminated "for cause" and they had reportedly engaged in breaches of fiduciary duties.

The day suit was filed, Hayes sent another e-mail to all employees on the e-mail system advising that it had sued the three executives "for breach of fiduciary duty to the company." This e-mail also again stated that the three had been "terminated for cause."

Dod, Hayes' publicist, stated that he saw nothing in the conduct of the three men that struck him as disloyal or a breach of fiduciary duty to the company or anything else to suggest that they were acting against Hayes' interests. Further, during the happening of these events, the three men were not given any specific explanation as to why they had been fired. Hayes' counsel did advise, in one of the meetings held after their termination, that the publicity surrounding their bankruptcy court testimony was "the problem [with] what [they] had done."

1. In its first and third enumerations of error, Hayes argues that denial of its motion for directed verdict was error because: (a) to say someone has been terminated "for cause" is not defamatory as a matter of law, (b) the communications to employees were subject to qualified privilege, and (c) the allegations were true.

(a) While Hayes is correct that announcing the mere fact of an employee at-will's termination carried no defamatory implication, *Brewer v. MARTA*, 204 Ga. App. 241 (2) (419 SE2d 60) (1992); *Zielinski v. Clorox Co.*, 215 Ga. App. 97, 99 (2) (450 SE2d 222) (1994), that is not what happened in this case. Here, the addition of "for cause" as well as allegations that they had breached their fiduciary duties to the company supplied additional information indicating much more than the fact of termination.

As argued by Franza and Stuckey, it was not incumbent upon them to prove actual malice by Hayes, because the statements made tended to injure their personal reputations as well as their professional reputations as corporate executives and were, therefore, presumed to be malicious. OCGA § 51-5-5; *Hub Motor Co. v. Zurawski*, 157 Ga. App. 850, 852 (3) (278 SE2d 689) (1981); *Montgomery v. Pacific & Southern Co.*, 131 Ga. App. 712, 717 (11), (12) (206 SE2d 631) (1974), aff'd, *Pacific & Southern Co. v. Montgomery*, 233 Ga. 175 (210 SE2d 714) (1974), overruled on other grounds, *Diamond v. American Family Corp.*, 186 Ga. App. 681 (368 SE2d 350) (1988); *Sheley v. Southeastern Newspapers*, 87 Ga. App. 167, 171 (73 SE2d 211) (1952); see *Horton v. Georgian Co.*, 175 Ga. 261, 272 (165 SE 443) (1932).

Nor is it necessary for us to decide whether, as a matter of law, merely stating that someone has been terminated "for cause" is not defamatory in and of itself, although Franza and Stuckey cite numerous cases from other jurisdictions in which it has been held to be

defamatory.[3] Here, in addition to stating they had been dismissed "for cause," there was the additional statement that they had breached their fiduciary duties to Hayes, clearly implying wrongdoing.

As a general rule, whether a statement is defamatory is left to the jury to determine. E.g., *Southern Bell Tel. &c. v. Coastal Transmission Svc.*, 167 Ga. App. 611, 613 (2) (a) (307 SE2d 83) (1983). Here, even were we to assume that the terms "for cause" and "breach of fiduciary duties" were ambiguous, the ambiguity was for the jury's resolution.

As stated in *Montgomery v. Pacific & Southern Co.*, supra at 715 (5), "[a] publisher of matter is responsible, not only for the actual words published, but for the innuendo that may arise from such words. Words apparently innocent may convey a libelous charge when considered in connection with the innuendo and circumstances surrounding the publication. [Cits.]" See also *Stalvey v. Atlanta Business Chronicle*, 202 Ga. App. 597, 599 (1) (414 SE2d 898) (1992); *Hub Motor Co. v. Zurawski*, supra. Here, the overall circumstances, looked at as a whole, authorized the jury to conclude that the statements were defamatory. *Southern Co. v. Hamburg*, 220 Ga. App. 834, 838-839 (1) (470 SE2d 467) (1996).

There was no error in the trial court's denial of the motions for directed verdict, j.n.o.v., and new trial on this ground.

(b) Hayes also argues that the e-mails were privileged because they were only sent to employees.

An exception has evolved to the broad definition of publication, in that

> when the communication is intracorporate, or between members of unincorporated groups or associations, *and is heard by one who, because of his/her duty or authority has reason to receive information,* there is no publication of the allegedly slanderous material, and without publication, there is no cause of action for slander. . . . *Terrell v. Holmes*, 226 Ga. App. 341, 342 (1) (487 SE2d 6) (1997); see *ITT Rayonier v. McLaney*, 204 Ga. App. 762, 764 (2) (420 SE2d 610) (1992); *Kurtz v. Williams*, 188 Ga. App. 14, 15 (3) (371 SE2d 878) (1988).

(Emphasis supplied.) *Galardi v. Steele-Inman*, 266 Ga. App. 515, 519 (2) (597 SE2d 571) (2004).

---

[3] See *Carney v. Memorial Hosp. &c.*, 64 NY2d 770 (475 NE2d 451) (1985); *Pattison v. Gulf Bag Co.*, 116 La. 963 (41 So. 224) (1906); *Abella v. Barringer Resources*, 615 A2d 288 (N.J. Super. Ct. 1992).

The burden of proving the elements of privilege was upon Hayes. *Dominy v. Shumpert*, 235 Ga. App. 500, 506 (3) (510 SE2d 81) (1998). First, we note that no argument was made below or here regarding privilege vis-á-vis the report by Hayes' officers and attorney of this matter to the Atlanta Journal-Constitution and this alone defeats the argument that Hayes was entitled to directed verdict, j.n.o.v., or new trial on this basis.

Further, there was no showing made by Hayes below why every employee with an e-mail address, including those in foreign countries with whom Franza and Stuckey had no relationship, needed to know the conveyed information. Compare *Galardi v. Steele-Inman*, supra, and *Jones v. J. C. Penney Co.*, 164 Ga. App. 432 (297 SE2d 339) (1982), with *Southern Co. v. Hamburg*, supra, and *Duchess Chenilles, Inc. v. Masters*, 84 Ga. App. 822, 828-829 (4) (67 SE2d 600) (1951).

(c) Hayes' claim that the statements were true was vigorously contested at trial by Franza and Stuckey. Here, the argument consists primarily of rearguing the facts, which argument has already been considered by the jury and determined adversely to Hayes. There was no error on this basis.

(d) Two further arguments made here[4] in support of these enumerations of error were not the basis for the motions made below and they cannot be made for the first time on appeal. *Standard Guaranty Ins. Co. v. Bundrage*, 264 Ga. 632, 633 (452 SE2d 474) (1994); *Allen v. Peachtree Airport Park Joint Venture*, 231 Ga. App. 549, 550 (2) (499 SE2d 690) (1998); *MacDonald v. MacDonald*, 156 Ga. App. 565, 566 (1) (a) (275 SE2d 142) (1980).

2. Likewise, the argument made in Hayes' second enumeration was not made below and will not be considered here. *Standard Guaranty Ins. Co.*, supra.

3. Finally, in its fourth enumeration of error, Hayes contends that the trial court erred in allowing counter-plaintiffs' Exhibit 154 to go out with the jury. Exhibit 154 was a business card upon which Stuckey had scribbled talking points for the presentation to Mr. Hayes and corporate counsel during their discussions as well as for the meeting with interested employees.

At trial, the objection made to the admission of the card into evidence was that it would violate the continuing witness rule.

"In Georgia the 'continuing witness' objection is based on the notion that written testimony is heard by the jury when

---

[4] They are that a directed verdict should have been granted because there was no showing of applicable insurance which covered the claim and that punitive damages and attorney fees were not covered by insurance coverage.

read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. (Cit.)" *Tibbs v. Tibbs*, 257 Ga. 370-371 (359 SE2d 674) (1987). This objection has been applied to evidence such as the affidavit in *Tibbs*, depositions, written dying declarations, written confessions, and other statements constituting "the equivalent of depositions. (Cits.)" *Kenney v. State*, 196 Ga. App. 776, 777 (2) (397 SE2d 131) (1990).

*MARTA v. Green Intl., Inc.*, 235 Ga. App. 419, 424 (3) (a) (509 SE2d 674) (1998).

First, it is not clear that the cryptic notations on the business card, such as "difficult decision," "common ground," and "believe in company" constitute the " 'equivalent of depositions.' " *MARTA*, supra. Second, the trial court did not allow Stuckey to testify as to the statements he made at the meetings, but only allowed the card into evidence. Therefore, there was no reading of the material to be reemphasized to the jury.

Further, similar documentary evidence has been found admissible as original evidence. *Hodson v. Mawson*, 227 Ga. App. 490, 491 (2) (489 SE2d 855) (1997) (medical records which were not read to jury by physician were allowed into evidence and to go out with the jury as original documentary evidence); *Hughes v. State*, 217 Ga. App. 766, 768 (2) (458 SE2d 911) (1995) (letter written by defendant to victim but not read to jury allowed).

Finally, the document appears to be admissible also as part of the res gestae. *Davison v. State*, 241 Ga. App. 685, 687-688 (3) (527 SE2d 285) (1999).

There was no error.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 6, 2004.

*Hall, Booth, Smith & Slover, Robert L. Shannon, Jr., Randall C. Farmer*, for appellant.

*Rogers & Hardin, John J. Almond*, for appellees.