## 74975. ROBINSON v. THE STATE.
### (361 SE2d 542)

BIRDSONG, Chief Judge.

Freddie B. Robinson was convicted of two counts of forcible rape

and one count of kidnapping. He was sentenced to serve concurrent life sentences on the rape charges and 20 years with 10 years to serve consecutive to the life sentences on the kidnapping charge. He brings this appeal enumerating as error the general grounds and the admission of voice identification evidence. *Held*:

We conclude neither enumeration has substantial merit.

The relevant evidence in this 5-day trial shows that on December 17 a man (subsequently identified as Robinson) went to an apartment complex and requested the manager to show him an apartment. While in the apartment, Robinson grabbed the female manager around the throat and held a paring knife in a threatening manner. He ordered her to disrobe and lie down on the floor for purposes of sex. Fortuitously, the manager dissuaded Robinson from carrying out his intended action, and Robinson fled. Robinson was seen by another person on this occasion and that person also identified Robinson as the probable accoster. Robinson dropped a pamphlet on the floor of the apartment which he was inspecting. That pamphlet was recovered and discovered to have a finger and palm print attributable to Robinson.

Subsequently on December 21 in a different apartment complex, Robinson went to the office and requested to inspect an apartment. He was shown an apartment and left. Approximately eleven hours later, Robinson was again seen in the same apartment complex. He was seen walking toward the laundry room area. The police were called. Meantime, Robinson walked into the laundry room and after a brief and innocent conversation with a female who was using a washing machine, Robinson grabbed the female from behind and placed some object against her body which she believed to be a gun but apparently was a knife. This female was pulled outside the laundry room against her will and forced to disrobe. Robinson then had sex with the victim twice. He then threw her clothes into the bushes and fled.

The police soon apprehended Robinson as a possible suspect. He was placed in a lineup at the police station and was positively identified by the rape victim as the person in the laundry room. While the victim gave several reasons for her identification such as size, clothes, eyes, a razor burn on his neck, the aggregate of the characteristics removed all doubt from her identification. Much of this was corroborated by the witnesses of the morning visit by Robinson on December 21. The apartment manager from the assault of December 17 was also present at this lineup (though not at the same moment) and identified Robinson as an assaulter with the same motives and acting in similar mode. Serological examinations were conducted of semen removed from the body of the rape victim and testimony offered that approximately ten percent of citizens of Georgia would have blood

characteristics found in the seminal fluid but that ten percent would not include the victim or her husband but would include Robinson. Lastly a party who participated in the lineup at the same time as Robinson (and in fact stood next to Robinson) by sheer coincidence happened subsequently to be placed in the same detention cell with Robinson. The two men recognized each other and Robinson was asked the reason for the lineup and whether he was involved. Robinson told his cellmate that he did not like white women and that was why he raped the woman near a laundry room of an apartment complex. He denied however using a gun, but contended it was a knife.

Opposed to this inculpatory evidence, Robinson offered evidence that he had been at home with his wife and children and thus it would have been physically impossible to be at the scene of the rape. Robinson at first denied that he had been at the apartment complex on the morning of December 21, but later changed the testimony to admit that he had been there to look at an apartment.

The jury was charged fully upon the issues of alibi and identification. Our responsibility on appeal is not to weigh the evidence and give a de novo opinion as to where the greater weight of the evidence lies but merely to determine if there is sufficient evidence to satisfy a jury beyond reasonable doubt of its verdict of guilty. *Proctor v. State*, 235 Ga. 720 (221 SE2d 556). In passing on the sufficiency of the evidence to support the verdict, this court will afford the evidence that view which is most favorable to the State, for every inference is in favor of the verdict. *Taylor v. State*, 138 Ga. App. 95, 96 (225 SE2d 508). We will not speculate as to what evidence the jury chose to believe or to disbelieve. On appeal we are duty bound to construe the evidence and its inferences so as to uphold the jury's verdict. *Mills v. State*, 137 Ga. App. 305, 306 (223 SE2d 498). Where the testimony of the State and that of the defendant is in conflict, the jury is the final arbiter. *Sims v. State*, 137 Ga. App. 264 (223 SE2d 468). The jury resolved this conflict in favor of the State and this court will not substitute its judgment for that of the jury. *Glover v. State*, 237 Ga. 859, 860 (230 SE2d 293). We are satisfied that the evidence was of such character and quantity as to warrant any rational jury of reasonable persons to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

As to the voice identification, the evidence shows that Robinson was required to speak certain words for the hearing of the victims of the December 17 assault and the December 21 rapes. The victim of the December 21 rapes stated the spoken word did not aid her in making her positive identification of Robinson, and she discounted its value. The victim of the December 17 assault did associate Robinson with the voice as her attacker. Pretermitting the fact that this evidence is mostly cumulative (see *Glass v. State*, 235 Ga. 17 (218 SE2d

776)) and assuming arguendo that voice identification violates the right against compulsory incrimination (but see *Wiley v. State*, 250 Ga. 343, 349 (296 SE2d 714)), we would still find such assumed error to be harmless. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869). The rape victim of the crime charged found no help in her identification by the spoken word and the evidence of the other victim who did obtain some use from the voice related to an uncharged crime. That identification moreover was also supported by Robinson's physical appearance, his finger and palm prints, serological evidence, and by the additional identification of third parties.

However, we will not leave this enumeration as harmless error. Notwithstanding Robinson's plea that earlier cases permitting the admission of voice identification evidence as consistent with the Fifth Amendment should not be followed because voice identification falls within the stricter application of the Georgia Constitution, we will not disregard those cases, nor do we see any reason so to do. These cases on sound logic conclude it is permissible under both the federal and state constitutions to admit voice identification evidence when such evidence contributes to the search for truth. See OCGA § 24-9-20; *Jenkins v. State*, 167 Ga. App. 840, 842 (308 SE2d 14); *Clark v. State*, 166 Ga. App. 366, 369 (304 SE2d 494).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 30, 1987.

*Carl Greenberg*, for appellant.

*Robert E. Wilson, District Attorney, Robert E. Statham III, Susan Brooks, Assistant District Attorneys*, for appellee.