A99A1819. BROWN v. THE STATE.
(531 SE2d 409)

MILLER, Judge.

Based on his confrontations with three separate victims in the Carver Homes area within a five-week period, a jury found Randy Brown guilty of aggravated assault with a deadly weapon, two counts of aggravated assault with the intent to rape, two counts of burglary, criminal attempt to commit burglary, and peeping Tom. From the denial of his motion for a new trial, Brown appeals, urging seven enumerations of error. We affirm.

1. Brown challenges the sufficiency of the evidence on each conviction. On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and Brown no longer enjoys the presumption of innocence.[1] An appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out

---

[1] *Patterson v. State*, 225 Ga. App. 515 (484 SE2d 317) (1997).
[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Patterson*, supra, 225 Ga. App. 515.

the State's case, the jury's verdict will be upheld.[3]

(a) With respect to Victim-1, Brown was found guilty of aggravated assault (Count 1), aggravated assault with the intent to rape (Count 2), and burglary, with rape as the intended felony (Count 3). Construed to uphold the jury's verdicts, the evidence shows that on June 6, 1995, at approximately 3:45 a.m., Brown entered Victim-1's home located across the street from Carver Homes. Brown crawled onto Victim-1's back as she slept in her bed, pressed a knife to her neck, and then began fondling her genital area. She partially rolled over to identify her assailant. Because the streetlights directly outside the bedroom window provided light in the room, she was able to see Brown. Wearing only boxer shorts and holding her down, Brown kissed her neck and demanded that she open her legs. Brown tossed the knife onto a nearby chair.

Terrified she would be raped or otherwise hurt, Victim-1 tried to remain calm to devise an escape. She offered Brown her money and valuables, but he declined. Talking to Brown, she ascertained that he lived in the area and that he stuttered. She lured Brown out of the bed and into the living room under the guise of searching for a condom.

Despite his warning her to not turn on any lights, she turned on the hall light and saw Brown's face. Brown shoved her, then turned off the light. She suggested turning on a closet light to aid in walking through the rooms. When Brown entered the walk-in closet, she fled through the front door. She later returned to her home to find her back door open and a window, which was operational and locked the night before, jammed open so that it no longer operated.

Without any hesitation, Victim-1 identified Brown in a photographic lineup and again at trial. Brown testified at trial that he has stuttered all of his life and that he lived in Carver Homes. With respect to the first victim, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Brown was guilty of each offense alleged in Counts 1, 2, and 3 of the indictment.

(b) Regarding Victim-2, Brown was found guilty of aggravated assault with intent to rape (Count 4) and burglary with rape as the intended felony (Count 5). Construed to uphold the jury's verdicts, the evidence shows that on June 29, 1995, at approximately 4:10 a.m., Brown entered Victim-2's home located in Carver Homes. Victim-2 awakened in her bed to find Brown fondling her genital area. In the illumination of the hall light, bathroom light, and streetlights, she stared at Brown's face and "evil smile." Brown left the bedroom,

[3] Id.

then returned and punched her. Brown left the home.

Victim-2 later found the front door, locked the previous night, open. She also discovered an open window, which had been closed the night before, and a screen missing from that window. The screen was later found near the home of Brown's grandmother. Without any hesitation, Victim-2 identified Brown from a photographic lineup and again at trial.

(i) Brown contends that the State failed to prove aggravated assault because he had no deadly weapon. This contention is without merit. The jury found Brown guilty of an assault aggravated by his intent to rape, which is entirely distinct from the crime of aggravated assault with a deadly weapon.[4]

(ii) Brown contends that the evidence was insufficient to authorize the jury to find intent to rape, which was necessary for Counts 4 and 5. Victim-2 testified that she woke up to find Brown fondling her genital area. Generally, specific intent must be proved by circumstantial evidence, and the question of whether a burglary defendant intended to commit a given felony when he entered a dwelling is for the jury's determination.[5] The evidence authorized the jury to find intent to commit rape.[6]

(iii) Brown contends that because there was no evidence of broken or damaged windows or doors, he could not have "burglarized" Victim-2's home. But a forced entry is not required; it is sufficient if the defendant enters a building "without authority."[7] The evidence supported a finding that Brown entered Victim-2's home without authority.

With respect to the second victim, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Brown was guilty of aggravated assault with the intent to rape (Count 4) and burglary (Count 5).

(c) With regard to Victim-3, Brown was found guilty of criminal attempt to commit burglary (Count 6) and peeping Tom (Count 7). Construed to uphold the jury's verdicts, the evidence regarding the third victim shows that on July 8, 1995, at approximately 5:50 a.m., Brown was crouching at the window ledge of Victim-3's bedroom, attempting to pick the lock. Returning from taking a shower, Victim-3 noticed a shadow and snatched back the curtain, discovering Brown with something in his hand. Brown jumped away, stared at Victim-3 momentarily, then walked to another side of the building.

---

[4] Compare OCGA § 16-5-21 (a) (1) with (2).

[5] *Kelley v. State*, 201 Ga. App. 343, 344 (2) (411 SE2d 276) (1991).

[6] *Butler v. State*, 194 Ga. App. 895, 897 (2) (392 SE2d 324) (1990).

[7] OCGA § 16-7-1 (a); *Bridges v. State*, 123 Ga. App. 157, 160 (6) (179 SE2d 685) (1970). Accord *Toney v. State*, 225 Ga. App. 228 (483 SE2d 627) (1997).

She continued to watch Brown through another window, until Brown again ran from her view. With many streetlights providing light, she was able to get a good look at Brown. She later noticed that although she had closed and locked the bedroom window before going to bed, the window was open approximately three inches. Without any hesitation, Victim-3 identified Brown from a photographic lineup and again at trial.

(i) Brown contends that because no one testified that the lock on the bedroom window was broken or damaged, it is not logical for the jury to find that he forced the window open. As addressed in Division 1 (b) (iii) above, this contention is without merit.

(ii) Brown contends that the State failed to prove that he took a substantial step to enter Victim-3's home when the only evidence was that he was crouched at the window ledge with something in his hand. But proof of only one substantial step toward the commission of a crime is sufficient.[8] Here Brown came to Victim-3's bedroom window at 5:50 a.m. He crouched at the window, worked to pick the lock, opened the window approximately three inches, and then fled when he realized that he had been discovered. The fact that further steps must be taken before the crime can be completed does not preclude a finding that steps already undertaken were substantial.[9] The evidence authorized the jury's verdict that Brown took a substantial step toward entering Victim-3's home without authority.

(iii) Complaining that the State failed to prove an essential element (intent to commit rape), Brown argues that crouching at a bedroom window ledge fails to show an intent to rape. He also urges that the criminal attempt to commit burglary, with rape as the intended felony, is inconsistent with the "peeping Tom" charge.

The question of intent is one for the jury, based on its consideration of the words, conduct, demeanor, motive, and all other relevant circumstances.[10] Brown's intent to commit rape was demonstrated by his spying through a bedroom window at a woman who had just finished showering, his attempt to open that window, and his flight when discovered. The two recent burglaries nearby in which Brown sexually assaulted the female residents also are proof of his intent to rape in this instance.[11]

Because Brown failed to argue the issue in his brief, his conclusory contention that the charge of criminal attempt to commit burglary is inconsistent with the "peeping Tom" charge is deemed

---

[8] OCGA § 16-4-1; *Smith v. State*, 189 Ga. App. 27, 29 (1) (375 SE2d 69) (1988).

[9] Id. at 30 (1).

[10] OCGA § 16-2-6.

[11] *Muckle v. State*, 202 Ga. App. 733 (2) (415 SE2d 299) (1992). See also *Atkins v. State*, 236 Ga. 624, 625 (225 SE2d 7) (1976).

abandoned.[12] Moreover, the inconsistent verdict rule has been abolished in criminal cases.[13]

With respect to the third victim, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Brown was guilty of criminal attempt to commit burglary with intent to rape[14] (Count 6) and peeping Tom[15] (Count 7).

2. Brown urges that the trial court erroneously admitted hearsay statements of several witnesses.

(a) Brown's sister, who testified that she approached Victim-1 regarding the charges against Brown, denied making any comments concerning Brown's prowling. On rebuttal, the State reexamined Victim-1, who testified that she overheard Brown's sister stating, "I done told him about prowling." Victim-1's testimony is admissible under the prior inconsistent statement exception to the hearsay rule, and no limiting instruction was necessary.[16]

(b) During the pretrial hearing, the trial court granted Brown's motion in limine to exclude hearsay statements that Debria Swanson claimed to be Brown's girlfriend. During trial, however, one of the arresting officers testified that Swanson stated during Brown's interview at the police precinct that she was Brown's girlfriend. Brown objected, and the trial court sustained Brown's objection. Brown then unsuccessfully moved for a mistrial, claiming without explanation that the statement placed Brown's character in issue by attaching him to Swanson. Brown contends that the trial court erred in denying his motion for mistrial.

The decision whether to grant a motion for mistrial based on improper character evidence is within the sound discretion of the trial judge, and an appellate court will not disturb that decision unless abuse of discretion is shown.[17] In reviewing the trial court's decision, an appellate court may consider the facts and circumstances, including the nature of the statement, the other evidence in the case, and the court's and counsel's actions in dealing with the impropriety.[18]

Brown's counsel failed to explain how a relationship between

---

[12] Court of Appeals Rule 27 (c) (2).

[13] See *Longenbach v. State*, 202 Ga. App. 863, 864 (3) (415 SE2d 546) (1992).

[14] See *Poole v. State*, 130 Ga. App. 603, 604 (2) (203 SE2d 886) (1974).

[15] OCGA § 16-11-61 (b); *Chance v. State*, 154 Ga. App. 543 (1) (268 SE2d 737) (1980).

[16] *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982) (a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is not hearsay but is admissible as substantive evidence and is not limited to impeachment purposes); see OCGA § 24-9-83.

[17] *Isaac v. State*, 269 Ga. 875, 877 (3) (505 SE2d 480) (1998).

[18] *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997).

Swanson and Brown placed his character in issue. Nor did any evidence support such an inference. Counsel argued below only that the relationship was irrelevant. But during trial Brown testified that he requested his family to visit the victims regarding his charges. His sister testified that Swanson accompanied her when she visited Victim-1 concerning Brown's charges. Brown testified that he knew Swanson and that Swanson had visited his sister at his home. This properly admitted evidence connected Brown to Swanson and rendered harmless any prejudicial effect from the officer's cumulative testimony.[19] We conclude the trial court did not abuse its discretion in denying Brown's motion for mistrial.[20]

3. Brown contends that the trial court erroneously refused to instruct the jury on lesser included offenses. The court explained that since Brown's defense was alibi, there was no need to charge on the lesser included offenses.

(a) Arguing that there was no evidence of an intent to commit a felony, Brown complains that the trial court erroneously denied his written requests to charge the jury on criminal trespass on Counts 5 (burglary) and 6 (attempted burglary). As explained above, the State's evidence was sufficient to establish all of the elements of the crimes in Counts 5 and 6. Defending that he did not commit the offenses, Brown presented evidence of alibi and misidentification.

*Edwards v. State*[21] set forth the complete rule on giving a defendant's requested charge on a lesser included offense: "where the state's evidence establishes all of the elements of an offense *and there is no evidence raising the lesser offense*, there is no error in failing to give a charge on the lesser offense."[22] Here the evidence showed the completed felony of peeping Tom before Brown attempted to break into the apartment. Because neither the State's evidence nor Brown's alibi evidence reasonably raised the inference of any intent other than that set out in the indictment (to commit a rape), the requested charge was not supported by evidence.[23] Accordingly, the trial court

---

[19] See *Wright v. State*, 253 Ga. 1, 5 (3) (316 SE2d 445) (1984) (statement did not warrant mistrial because unobjected-to testimony had already been given by other witness); *Ranalli v. State*, 197 Ga. App. 360, 364-365 (4) (398 SE2d 420) (1990) (prejudicial impact of improper statement was lessened by properly admitted evidence and by defendant's admission).

[20] See *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982) (unless it is apparent that a mistrial is essential to preserve the right to fair trial, the exercise of the judge's discretion will not be interfered with).

[21] 264 Ga. 131 (442 SE2d 444) (1994).

[22] (Citation omitted; emphasis in original.) Id. at 133. See *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990) ("a written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense").

[23] See *McLeroy v. State*, 184 Ga. App. 62, 63 (360 SE2d 631) (1987). See also *Brewer v. State*, 219 Ga. App. 16, 19 (5) (463 SE2d 906) (1995) ("defendant's evidence of alibi does not

did not err in refusing to give the requested charge.[24]

(b) Brown complains that the trial court erroneously denied his request to charge the jury on simple battery for Count 4 (aggravated assault with intent to rape). Brown, however, made no written request for this charge. "A trial judge never errs in failing to include a charge on a lesser included offense unless there is a written request to charge."[25]

4. Brown claims that the trial court erred in denying his motion to suppress his statements to police officers at the arrest scene and at the precinct. Without pointing to any particular statement and showing how the statement was incriminating, Brown asserts that his statements were not knowing and intelligent and further that his statements should have been suppressed because he had not been properly *Mirandized*.[26]

(a) Police officers arrested Brown at his home and escorted him to the backseat of a police car, where the detective advised Brown of his *Miranda* rights through the car's cage. The detective testified without contradiction at Brown's *Jackson v. Denno*[27] hearing that Brown verbally responded that he understood his *Miranda* rights. At trial, Brown confirmed that the detective advised him of his *Miranda* rights, and there is no evidence that Brown invoked his right to counsel. Evidence supported the trial court's finding that police had properly informed Brown of his *Miranda* rights and that he knowingly and intelligently waived them.

(b) The police officers transported Brown to the police precinct to charge, book, and interview him. After reminding Brown that he had already been told his *Miranda* rights, the detective advised Brown of the formal charges and that the three victims had positively identified him. Brown winked, then verbally responded that he understood the *Miranda* warnings, that he was not a thief, and that he had not molested any women. When the detective asked Brown whether the three victims of this case, as well as the two victims who identified him on his two prior rape convictions, were all lying, Brown smiled, shrugged, and suggested a conspiracy. Brown complains that he was not given his *Miranda* rights again, but repeating *Miranda* warnings

---

reasonably raise the inference that he unlawfully entered the home with a less culpable mental state of mind than the felonious intent of a burglar as charged in the indictment") (citations omitted); *Johnson v. State*, 164 Ga. App. 429, 430 (1) (296 SE2d 775) (1982) (alibi defense presented no evidence mitigating the criminal intent element of burglary to that of criminal trespass).

[24] *McLeroy*, supra, 184 Ga. App. at 63.

[25] (Citation and punctuation omitted.) *Livery v. State*, 233 Ga. App. 882, 886 (4) (506 SE2d 165) (1998).

[26] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[27] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

prior to the precinct interrogation was unnecessary.[28]

5. Brown contends that the trial court erred in denying his motion to suppress pretrial photographic lineup identification. He complains that the photographic array was unduly suggestive because his picture was lighter in color and his head pointed upwards.

At the pretrial hearing, the detective testified that in constructing the photographic lineup, he selected mug shots of five males of the same race, similar ages, noses, head shapes, hair lengths, and complexions. He randomly added Brown's mug shot, which was taken about a year before the photographic lineup, to the array of other mug shots. Brown correctly points out that his photograph is lighter than the other pictures, but the detective testified that he advised the victims that hair color could be different, that haircuts could be different, and that the exposure of the film, the lighting position, and shadows could make complexions different. Brown also correctly points out that his head is pointed upward, but at least one other male's head points upward as well.

The record shows that each victim had ample opportunity to observe Brown. The detective showed the photographic lineup to each victim outside the company of the other two victims, and the police officers made no indication as to whom to select. Each of the victims, without hesitation, identified Brown as the perpetrator.

It is error to allow testimony concerning a pretrial identification of the defendant only

> if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. A court need not consider whether there was a substantial likelihood of misidentification if it determines that the identification procedure was not impermissibly suggestive. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator or [when it] is the equivalent of the authorities telling the witness, This is our suspect.[29]

The photographic lineup depicts six males of the same race, simi-

---

[28] *Sutton v. State*, 264 Ga. 222, 223 (2) (443 SE2d 481) (1994) (the Georgia Bureau of Investigation agent's failure to repeat *Miranda* warnings to defendant prior to the later interrogation, which resulted in incriminating statements, did not render the statements inadmissible since the agent reminded the defendant that he previously had been advised of his rights).

[29] (Citations and punctuation omitted.) *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999).

lar complexion, age, and hair lengths. The record contains no evidence that the photographic lineup was assembled or presented in an impermissibly suggestive manner. Considering the totality of the circumstances, we discern no error.

6. Brown contends that the prosecutor improperly injected into closing argument facts not in evidence. In support of his claim of alibi, Brown testified that two other females claimed to have been attacked during the time he was incarcerated. Both women reported that the assailant looked remarkably like Brown.

During closing, the prosecutor attempted to discredit the two women's testimony and invited the jurors to consider "the odds" that of all the women in Carver Homes, the assailant would select two of Brown's acquaintances. Brown specifically complains of the prosecutor's argument that:

> There are 3,600 residents in Carver Homes alone, and that's not including Bowen Circle across the street where two of our victims lived. Just Carver Homes has 3,600 residents. Now, let me be very conservative with the number of women that probably live in Carver Homes. Let's say there's [sic] 600.

Brown urges that such statistics indicating the number of women who reside in Carver Homes were never introduced at trial. After the trial court overruled Brown's objection, the prosecutor continued: "let's say that there are 600 women or 500 or 400 women, and there's probably going to be more women than men, because a lot of these women are single mothers."

The police detective assigned to Carver Homes testified that Carver Homes had approximately 3,600 residents. "The prosecution is permitted to draw deductions from the evidence and these deductions may be illogical, unreasonable or even absurd so long as there is evidence from which such deductions can be made."[30] The challenged statement was an inference from evidence presented during the trial, and there was no error.

7. Brown contends that the trial court erred by not merging Count 1 (aggravated assault with a deadly weapon upon Victim-1) and Count 2 (aggravated assault with the intent to rape upon Victim-1). We disagree. There was evidence of assault as Brown threatened Victim-1 gratuitously with the knife and evidence of a subsequent assault as Brown shoved Victim-1 with intent to rape. Therefore, it

---

[30] (Citation and punctuation omitted.) *Clark v. State*, 146 Ga. App. 697 (3) (247 SE2d 221) (1978).

was not error to sentence Brown separately on the jury's findings of guilt for both offenses.[31]

8. Relying on *Phelps v. State*,[32] Brown complains that the jury instructions did not define the crime of rape as the intended felony in Counts 3 and 5. This complaint is simply inaccurate. The trial court defined the charge of rape and further instructed that, in order to convict Brown of burglary, the jury must find beyond a reasonable doubt that he specifically intended to commit the crime of rape.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 17, 2000.

*Michael S. Katz*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[31] See *Taylor v. State*, 202 Ga. App. 671, 672 (415 SE2d 483) (1992); *Sylvester v. State*, 168 Ga. App. 718 (2) (310 SE2d 284) (1983); *Coaxum v. State*, 146 Ga. App. 370, 371 (3) (246 SE2d 403) (1978).

[32] 192 Ga. App. 193, 195 (1) (384 SE2d 260) (1989).