294 Ga. 767
FINAL COPY

S13G0668. THE STATE v. NEWTON.

BENHAM, Justice.

We granted the State's petition for a writ of certiorari to consider a matter

of first impression. As summarized by the Court of Appeals in <u>Newton v. State</u>,

319 Ga. App. 494 (736 SE2d 752) (2012), the facts are as follows:

> David Allen Newton was tried by a jury and convicted of
> burglary, theft by taking, and first degree forgery for taking jewelry
> while touring a home that he claimed he was interested in
> purchasing and using a fictitious name on a brokerage agreement.
> He was sentenced to twenty years for burglary, ten years for theft
> by taking to run concurrently with the burglary sentence, and ten
> years for forgery to run consecutively to the burglary sentence. The
> trial court ordered that upon service of nine years in confinement,
> Newton could serve the remaining twenty-one years on probation.
> On appeal, Newton challenges the sufficiency of the evidence to
> support his burglary conviction. He does not appeal his conviction
> for theft by taking or forgery.

> Viewed in the light most favorable to the verdict, the evidence
> showed that a man identifying himself as David Flynn contacted
> Jessica Harris, a real estate agent in Douglas County, and told her
> that he was relocating from New Jersey and wanted to look at
> houses in the $600,000 to $1,000,000 price range. Harris met with
> the potential buyer and presented him with a buyer's brokerage
> agreement, which he signed as David Flynn. He provided a driver's
> license with his picture and the name David Flynn. They spent two
> full days looking at houses. At trial, Harris identified the defendant,

David Newton, as the potential buyer she had known as David Flynn.

One of the houses they planned to tour was owned by another real estate agent, Cynthia Murphy. Harris testified that the house did not have a lockbox so she called Murphy to let them in. After letting them into her house, Murphy left. While Harris and Newton were upstairs looking at the master bedroom, Harris heard a door shut and ran downstairs. Murphy had returned, and she spoke briefly to Harris while Newton was alone in the master bedroom. Murphy and Harris both went upstairs to look for Newton. Murphy checked a chest in her closet where she kept two boxes of jewelry. She saw that the two boxes were still there, but did not open them at the time. Harris found her client; they finished touring the house and left. When they got back to her car, Harris saw Newton reach into the back seat where he had stored a canvas tote bag and do something with the bag before getting into her car.

A week to ten days later, Murphy received a call from her managing broker asking her to check her house for missing items. She checked her jewelry boxes, and they were empty. The value of her missing jewelry was approximately $20,000. Murphy testified that from the time Newton toured her house until she discovered her jewelry was gone, only immediate family members had access to the area where her jewelry was stored.

Shay Brooks with the Douglas County Sheriff's Office investigated the theft from Murphy's home. After obtaining the paperwork Harris had on David Flynn, Brooks determined that the New Jersey license in the name of David Flynn was fake and received information that David Flynn was actually David Newton.

The State introduced similar transaction evidence of a theft from a home in Sandy Springs. Kelly Boudreau, a real estate agent in Atlanta, testified that she showed Newton a house as a potential buyer, and the following day, the homeowners notified her that a

2

necklace had been taken from the house. Boudreau testified that she was not with Newton at all times while they were looking at the house. The detective investigating that theft obtained a photograph of Newton, showed it to real estate agents, and put out a buyer beware notice on the real estate listing service. He obtained an arrest warrant for Newton for theft of the necklace, which was valued at $5,000.

After he was convicted, Newton filed motions for new trial. At the hearing on those motions, counsel for Newton argued that the evidence was insufficient to support the burglary conviction because there was no evidence that he entered the house without authority. The trial court denied the motion, noting that Newton never had authority to enter the house because only a person named David Flynn was so authorized.

. . .The indictment in this case charged Newton with

enter[ing] the dwelling house of another without authority and with the intent to commit a theft therein, to wit: Said accused did enter a room within the dwelling house of Cynthia Murphy without authority in order to commit a theft therein.

The jury was instructed that

[a] person commits the offense of burglary when, without authority and with the intent to commit a theft therein, he enters a room in the dwelling house of another. To constitute the offense of burglary, it is not necessary that it be shown that a break-in occurred or that an actual theft was accomplished.

Despite the fact that appellee engaged in subterfuge to gain permission to enter Murphy's home, the Court of Appeals reversed appellee's burglary conviction, concluding the evidence was insufficient to show that appellee was "without authority" to be in the victim's house. *Newton* at 498. We granted the State's petition for certiorari, posing the following question: "Whether a person enters a home 'without authority' when he enters with the consent of the owner, but when that consent was obtained by fraud, deceit, or false pretense. See OCGA § 16-7-1; see also OCGA § 16-1-3 (18)." Because we have determined the answer to our question to be in the affirmative, the Court of Appeals' decision must be reversed and appellee's conviction reinstated. Our reasons are set forth fully below.

"At common law burglary was defined as the breaking and entering of a dwelling house at night with the intent to commit a felony inside that dwelling. Although all modern statutes enlarge the scope of the crime, essentially they vary around this definition." A Rationale of the Law of Burglary, 51 Colum. L. Rev. 1009 (1951). See also Anderson, Helen A., From the Thief in the Night to the Guest Who Stayed Too Long: The Evolution of Burglary in the Shadow of

4

the Common Law, 45 Ind. L. Rev. 629, 633-635 (2012) (summarizing the historical development of common law burglary from 17th century England through to pre-1960 America and the early legislation of burglary in the states). Consistent with the early common law, Georgia's pre-1968 statutory law required a "breaking and entering" to establish the crime of burglary. See Hampton v. State, 145 Ga. App. 642 (244 SE2d 594) (1978) ("Formerly, burglary required breaking and entering. 1933 Code § 26-2401.[1] See Yawn v. State, 93 Ga. App. 236 (91 SE2d 312) [(1956)].").  In 1968, the criminal code was amended and Georgia did away with the breaking requirement such that proof of a forced entry was no longer a required element of burglary.  See Brown v. State, 242 Ga. App. 858 (1) (b) (ii) (531 SE2d 409) (2000); Toney v. State, 225 Ga. App. 228 (483 SE2d 627) (1997);  Goins v. State, 139 Ga. App. 6 (228 SE2d 13) (1976).  More specifically, the statutory language was changed to require that the entry be "without authority," coupled, of course, with the

---

[1] Code § 26-2401 of Georgia's 1933 criminal code defined burglary as:
the breaking and entering into the dwelling, mansion, or storehouse, or other place of business of another, where valuable goods, wares, produce, or any other article of value are contained or stored, with intent to commit a felony or larceny. All outhouses contiguous to or within the curtilage or protection of the mansion or dwelling house shall be considered as parts of the same.
Floyd v. State, 207 Ga. App.  275, 279 (427 SE2d 605) (1993) (punctuation omitted).

intent to commit a felony or theft within the dwelling or building of another.

See Ga. L. 1968, pp. 1249, 1287; 1968 Code § 26-1601.[2]   In 2007, when the

events in this case took place, OCGA § 16-7-1 (a) (2007) provided in pertinent

part as follows:[3]

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.

In the context of our criminal code and as applied in burglary cases specifically,

the term "without authority" has been defined to mean "without legal right or

privilege or without permission of a person legally entitled to withhold the

---

[2] Code § 26-1601 provided in pertinent part:
> A person commits burglary when, without authority and with intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, aircraft, watercraft, or other such structure designed for use as the dwelling of another, or enters or remains within any other building or any room or any part thereof.

Ga. L. 1968, p. 1287.

[3] After 2007, OCGA § 16-7-1 was amended to create the gradations of first and second degree burglary. The amendment became effective July 1, 2012 and applies only to offenses that occurred on or after that date.   Ga. L. 2012, pp. 899, 949, §§ 3-1, 9-1.  We note the Court of Appeals erroneously cited to the amended version of OCGA § 16-7-1 in its opinion.  Newton v. State, 319 Ga. App. at 495-496 (citing to the current version of OCGA § 16-7-1 (b)).  The applicable version of OCGA § 16-7-1 in this case predated the 2012 amendment.

right." OCGA § 16-1-3 (18); In the Interest of S. K., 289 Ga. App. 672, 675 (2) (658 SE2d 220) (2008); Abney v. State, 240 Ga. App. 280, 281 (1) (523 SE2d 362) (1999); Hambrick v. State, 174 Ga. App. 444, 447 (1) (330 SE2d 383) (1985).

Until the instant appeal, this Court had never considered whether consent to enter which is procured by fraud, deceit or trickery constitutes entry "without authority" as contemplated by OCGA § 16-7-1. Other jurisdictions which, like Georgia, have done away with the requirement of an actual breaking and adopted similar language requiring entry to be without authority have determined that consent to enter that is given based on a fraud or deceit perpetrated by the defendant is an unauthorized entry for the purposes of a burglary charge. See, e.g., State v. Abdullah, 967 A2d 469, 476 (R. I. 2009) (defendant gaining consent to enter by impersonating a pizza delivery man); People v. Burke, 937 P2d 886, 890 (Colo. App. 1996) (defendant gaining consent to enter by feigning retrieval of belongings from the marital home occupied by his estranged wife); State v. Maxwell, 234 Kan. 393, 396-397 (672 P2d 590) (1983) (defendant gaining consent to enter by telling the homeowner, who was an antique dealer, that he wanted to discuss a watch); State v. Lozier,

7

375 So2d 1333, 1337 (La. 1979) (defendant gaining consent to enter by impersonating a police officer); State v. Pierce, 14 Utah 2d 177 (380 P2d 725) (1963) (defendants gaining consent to enter by using aliases and forged check). The approach of these jurisdictions is consistent with the common law theory of "constructive breaking" where entry in the dwelling is gained by fraud or threat of force rather than gained by actual force. See 12A C. J. S. Burglary § 18; 45 Ind. L. Rev., supra, at 644 ("Most jurisdictions permit 'constructive breaking,' meaning entry gained by artifice, trick, fraud or threat."); State v. Abdullah, supra, 967 A2d at 476 (citing 3 Wayne R. LaFave, Substantive Criminal Law § 21.1 (a) at 207-208 (2d ed. 2003)); State v. Maxwell, 234 Kan. at 396 (citing to 4 Blackstone's Commentaries on the Laws of England, p. 226 (Christian's 15th ed. 1809) and to 13 Am. Jur.2d Burglary § 13). See also Nicholls v. State, 68 Wis. 416 (32 NW 543) (1887) ("So it has frequently been held in this country that, 'to obtain admission to a dwelling-house at night, with the intent to commit a felony by means of artifice or fraud, or upon a pretense of business or social intercourse, is a constructive breaking, and will sustain an indictment charging a burglary by breaking and entering.' "); People v. Burke, supra, 937 P2d at 890-891 (citing Le Mott's Case, 84 Eng. Rep. 1073 (1650) in

8

which case "defendants tricked the maid into believing they were there to see householder, then entering under false pretenses and robbing house, were adjudged guilty of burglary and hanged").[4]

Like the jurisdictions cited above, we see no meaningful difference between gaining entry by force and gaining consent to enter by artifice:

> The purpose of the burglary statute is to protect against the specific dangers posed by entry into secured premises of intruders bent on crime. The intruder who breaches the barrier with a lie or deception, by pretending to deliver a package or to read a meter, is no less dangerous than his more stealthy cohorts, and nothing in the statute suggests an intent to exempt him from liability.

People v. Zee, 124 Misc.2d 487, 489 (477 NYS2d 965) (1984).  The evolution of Georgia's statutory law concerning burglary has been to broaden rather than restrict the parameters within which it may be applied.  Here, the evidence showed appellee staged an elaborate ruse to pose as a potential home buyer.  Not

---

[4]And see 51 Colum. L. Rev., supra,  at n. 19:

As to constructive breaking, see, in general, Commonwealth v. Lowrey, 158 Mass. 18 [(32 NE 940)]  (1893) (defendant admitted [into a store] by accomplice who had himself fraudulently gained admittance to store [by pretending he wanted to make a purchase]); State v. Mordecai, 68 N.C. 207 (1873) (defendant admitted to [closed] store after pretending he wanted to buy goods); Johnston v. Commonwealth, 85 Pa. 54 (1877) (defendant admitted to dwelling after stating that he had business to conduct with a resident); Nicholls v. State, [supra,] . . . (defendant hid in a box shipped in railroad express car).

only did he use an alias, but he used false identification and gave false information concerning his true identity all to bolster his pretense of being a bona fide potential home buyer. That appellee's pretense directly targeted the real estate agent rather than the homeowner is of no moment. The real estate agent had a license from the homeowner to consent on the owner's behalf and grant entry for the limited purpose of showing the home to potential home buyers. Since the realtor's providing consent to enter the home was procured by fraud, appellee's entry into the home was "without authority" under OCGA § 16-7-1. Therefore, the Court of Appeals' decision is reversed, and appellee's conviction for burglary is reinstated.

Judgment reversed. All the Justices concur.

Decided March 10, 2014.

Certiorari to the Court of Appeals of Georgia – 319 Ga. App. 494.

David McDade, District Attorney, James A. Dooley, Emily K. Richardson, Assistant District Attorneys, for appellant.

Jason W. Swindle, Sr., for appellee.