303 Ga. 885
FINAL COPY

S18A0268. DUPREE v. THE STATE.

BENHAM, Justice.

Odes Dupree was convicted of malice murder and other crimes arising out of the asphyxiation death of 75-year-old Florene Duke.[1] The trial court denied Dupree's motion for new trial, and he appeals. As set forth below, we affirm.

1.    Raising the sufficiency of the evidence to convict him, Dupree asserts the trial court erred in denying his motion for directed verdict. Dupree's defense theory was that some other perpetrator committed the crimes. Viewed

---

[1] The crimes occurred between November 9 and November 10, 2014. On December 12, 2014, a Douglas County grand jury returned an indictment charging appellant with malice murder, felony murder (robbery), felony murder (burglary), kidnapping, robbery from a person more than 65 years of age, and burglary. Following a jury trial conducted from February 1 to February 8, 2016, the jury returned a guilty verdict on all counts. Appellant was sentenced to life without the possibility of parole for malice murder, twenty years of imprisonment for kidnapping, twenty years of imprisonment for robbery, and twenty years of imprisonment for burglary, each of which was to be served consecutive to the life sentence and to the other twenty-year terms of imprisonment. The guilty verdicts for the two felony murder charges were vacated by operation of law. Appellant filed a timely motion for new trial on February 15, 2016, which was later amended. Following a hearing, the trial court denied the motion by order dated August 23, 2017. Appellant filed a timely notice of appeal, and this case was docketed in this Court for the term beginning in December 2017. The case was submitted for decision on the briefs.

in a light most favorable to the verdict, however, the evidence fails to support Dupree's assertion that he was entitled to a directed verdict of acquittal.

Viewed in that light, the evidence showed that sometime between the dates of November 9 and 10, 2014, Dupree broke into the victim's apartment, beat her, hog-tied her hands and feet together behind her back, gagged her, and left her to suffocate on her bedroom floor. He also covered her body with a comforter. While at the victim's apartment, Dupree used the victim's phone to call his drug dealer, Detrone Royal, to tell him to meet him at the victim's address where he would "make it right between us." Royal testified at trial that when he arrived at the victim's apartment, Dupree told him it was his girlfriend's place, he was leaving her, and he was taking his belongings with him. Royal helped him take two televisions, one of which had to be removed from the wall, to Royal's car. Dupree gave the televisions to Royal to satisfy a drug debt. Dupree then placed the handsets from the victim's phones in a bag along with food items taken from the victim's freezer and cartons of the victim's cigarettes, and he returned to the nearby home of friends with whom he was staying at the time. The victim's body was discovered by relatives on November 10. She was wearing her night clothes and her bed comforter had been draped over her body.

Detectives obtained telephone records and traced phone calls made on the evening of November 9 to a number belonging to Royal, who had a record for drug sales and thefts. Authorities set up a controlled drug buy from Royal and then arrested him and took him into custody. He told the detectives, and testified at trial, that he did not know anyone else was in the apartment where he went to meet Dupree, and that he did not enter the victim's bedroom or see her in the residence. Based on identifying information supplied by Royal, Dupree was found and arrested. During interviews with authorities, Dupree first gave one name and later another name as the person he claimed committed the murder. Neither of these individuals could be linked to the crimes. In fact, one of these persons was incarcerated at the time. Human hairs found on the victim's body were scientifically linked to Dupree. A tank top that was tightly twisted around the victim's thumb tested positive for blood, some of which contained Dupree's DNA and some the victim's DNA. The stolen televisions that were retrieved contained fingerprints belonging to Dupree. The victim's relatives testified the victim did not know Dupree and would have had no reason to let him into her apartment voluntarily after she had dressed for bed. It appeared from the condition of the victim's bedroom that she had been in bed, but her body was found on the floor of the bedroom, and the condition of

the living room suggested there had been a struggle. A t-shirt had been stuffed in the victim's mouth, and an autopsy revealed that the cause of death was asphyxiation.

The test established in *Jackson v. Virginia*,[2] that the evidence viewed in the light most favorable to the jury's verdict must be sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt, is the proper standard of review when the sufficiency of the evidence is challenged. This is so whether the challenge arises from the denial of a motion for directed verdict or the denial of a motion for new trial or a challenge to a conviction on direct appeal. See *Stansell v. State*, 270 Ga. 147, 148 (1) (510 SE2d 292) (1998). Pursuant to this standard, the evidence presented at trial was sufficient to support the jury's guilty verdict on each of the charges of which Dupree was convicted and sentenced.

*Malice murder*: Malice murder involves causing the death of another with either express or implied malice aforethought. OCGA § 16-5-1 (a). Express malice is established by the deliberate intention to take the life of another "which is manifested by external circumstances capable of proof," and

---

[2] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

implied malice is established "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." OCGA § 16-5-1 (b). No evidence was presented of any provocation, justification, or excuse. Instead, sufficient evidence of malice aforethought was presented by the manner in which the victim was assaulted prior to her death, which caused blunt force impact injuries, including five fractured ribs. She was also bound and gagged so tightly that the base of her tongue was damaged, and was left to suffocate in a manner from which the jury could find either express malice or an abandoned and malignant heart.

*Robbery and burglary*: Likewise, the evidence, viewed in the light most favorable to the verdict, was sufficient for any rational trier of fact to have found beyond a reasonable doubt the essential elements to support the conviction of robbery[3] as well as the conviction of burglary.[4] The evidence supports the conclusion that Dupree entered or remained in the victim's home without authority and for the purpose of committing theft, in that the premises

---

[3] See OCGA § 16-8-40 (a) (1): "A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y use of force."

[4] See OCGA § 16-7-1 (b): "A person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied . . . dwelling house of another . . . ."

showed evidence of a struggle by the front door. Dupree's fingerprints were found on property removed from the victim's home and later recovered.

*Kidnapping*: The conviction for kidnapping was also supported by the evidence. For the offense of kidnapping to be shown, even slight movement of the person abducted is sufficient so long as the movement is not merely incidental to the commission of some other offense. OCGA § 16-5-40 (b). Pursuant to paragraph (b) (2) of the kidnapping statute, movement is not considered merely incidental to another offense if it: "(A) Conceals or isolates the victim; (B) Makes the commission of the other offense substantially easier; (C) Lessens the risk of detection; or (D) Is for the purpose of avoiding apprehension." OCGA § 16-5-40 (b) (2) (A)-(D). Here, the evidence was sufficient for a reasonable juror to conclude that the victim was moved from the living room to her bedroom at some point during the burglary after a struggle, and that her presence in the bedroom was concealed by placing a comforter over her. Indeed, the witness who arrived at the victim's home to help Dupree remove property from the home testified he did not see the victim.

Given this evidence, no error is shown by the trial court's denial of the motion for directed verdict or the motion for new trial on this ground.

2. Dupree asserts error in the trial court's failure to give two jury charges he requested. First, Dupree sought a deviation from the standard jury instruction on robbery by force and asked for language stating that the owner's consciousness of the taking before the taking is complete is an essential element of robbery. During the charge conference the attorneys engaged in a discussion with the trial court regarding the appropriateness of the requested charge. In response to the State's assertion that such an instruction did not apply when the defendant killed the victim to commit the robbery, Dupree's counsel acknowledged that if that were the law, then he could not proceed with the requested charge. Because Dupree's counsel made no objection with respect to the instruction on robbery at the conclusion of the court's jury instructions, Dupree may prevail on this claim of error only if plain error is shown. See OCGA § 17-8-58 (b). In fact, no error is shown in the trial court's refusal to give the requested charge. The cases relied upon by Dupree involve the offense of theft by snatching, which was not the offense for which Dupree was charged and tried. Dupree was charged with robbery by use of force. See OCGA § 16-8-40 (a) (1). "It is well-settled that a defendant commits a robbery if he kills the victim first and then takes the victim's property." *Lee v. State*, 270 Ga. 798, 801 (5) (514 SE2d 1) (1999). Because the victim's consciousness

of the taking is not an essential element in a case such as this one, he has failed to show plain legal error by the trial court's failure to give the requested instruction. To the extent Dupree also asserts he was entitled to an instruction on robbery as a lesser included offense of armed robbery, that argument is meritless, as he was not charged with armed robbery.

Dupree also argues he was entitled to an instruction on theft by taking as a lesser included offense of burglary, as he asserts there was no evidence of forced entry. Again, because Dupree failed to raise an objection to the instructions as given, he may prevail only if plain error is shown. And, again, no legal defect in the instructions given is shown. Use of forced entry is not a required element of burglary. See OCGA § 16-7-1. Instead, what is required is entry of or remaining within, in this case the dwelling house of another, "without authority and with the intent to commit a felony or theft therein . . . ." OCGA § 16-7-1 (b). See *State v. Newton*, 294 Ga. 767, 772 (755 SE2d 786) (2014) (even gaining consent to enter by artifice is sufficient to support a guilty verdict for burglary). Ample evidence was presented in this case that Dupree's entry into the victim's home was without authority, or at the very least that he remained in the victim's home without her authority, and that his intent for doing so was to commit theft. Even if the trial court erred by failing to give an

instruction on theft by taking as a lesser offense of burglary, Dupree has failed to meet one of the required elements of the test for showing plain error, i.e., that the error must have affected his substantial rights by affecting the outcome of the trial proceedings. See *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). In light of the strong evidence of Dupree's guilt of the offense of burglary, he has failed to demonstrate that failing to give the requested instruction on a lesser included offense likely affected the jury's verdict of guilt for this offense. See *Redding v. State*, 296 Ga. 471, 473 (2) (769 SE2d 67) (2015); *Howell v. State*, 330 Ga. App. 668, 674 (2) (769 SE2d 98) (2015).

3.      We have carefully examined each of the several assertions Dupree makes with respect to his claim of ineffective assistance of trial counsel, and, applying the test set forth in *Strickland v. Washington*,[5] we find they all lack merit.[6] Based on the testimony of trial counsel at the motion for new trial, as

---

[5] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[6] With respect to each assertion of ineffective assistance of counsel, Dupree either failed to demonstrate deficient performance or failed to establish that, but for counsel's errors, a reasonable probability exists that the results of the proceeding would have been different, both of which are required to establish ineffective assistance of counsel. See *Strickland v. Washington*, supra. Dupree's ineffective assistance of counsel assertions consist of the following: failure to investigate adequately Dupree's claim that the murder was committed by another assailant; playing only a redacted version of the recordings of Dupree's custodial interviews; inadequate preparation to respond to the State's presentation of incriminating medical and scientific evidence, or failure to retain an expert witness for the defense; failure to exercise a peremptory strike of a particular juror; failure to present evidence of an injury that allegedly would have shown Dupree could not

well as the trial record, Dupree has failed to demonstrate trial counsel rendered constitutionally ineffective assistance.

Judgment affirmed. All the Justices concur.

---

have participated in the murder; failure to request a change of venue; failure to point out weaknesses in the State's case; and failure to communicate plea offers.

Decided June 18, 2018.

Murder. Douglas Superior Court. Before Judge McClain.

Lawrence W. Daniel, for appellant.

Brian K. Fortner, District Attorney, Emily K. Richardson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General, for appellee.